**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

MICHAEL WARD d/b/a BRAINTEASER        :
PUBLICATIONS,        :    Civil Case No.
              Plaintiff,     :    12-CV-7987 (PAC)
      vs.                    :
                               :
ANDREWS McMEEL PUBLISHING, LLC,    :
                               :
             Defendant.

----------------------------------------------------------------X

## ANDREWS McMEEL PUBLISHING, LLC'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Robert Penchina
rpenchina@lskslaw.com
LEVINE SULLIVAN KOCH &
    SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
Tel:    (212) 858-6109
Fax:    (212) 858-6299

*Attorneys for Defendant Andrews McMeel*
*Publishing, LLC*

{00590231;v1}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ........................................................................................................................ 7

I.   WARD FAILS TO STATE A CLAIM FOR COPYRIGHT
     INFRINGEMENT ..................................................................................................... 8

II.  WARD FAILS TO STATE A CLAIM FOR TRADE DRESS
     INFRINGEMENT UNDER THE LANHAM ACT ................................................. 15

     A.   Ward Has No Protectable Trade Dress ......................................................... 15

     B.   AMP Made No Trademark Use of Anything Belonging to Ward ................. 18

     C.   Ward's Claim is Only Cognizable Under Copyright Law ............................ 20

III. WARD FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION
     UNDER NEW YORK LAW ................................................................................... 21

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affiliated Hospital Products, Inc. v. Merdel Game Mfg. Co.*,
   513 F.2d 1183 (2d Cir. 1975)............................................................................11

*Agence France Press v. Morel*,
   769 F. Supp. 2d 295 (S.D.N.Y. 2011) ...........................................................20

*Allen v. Scholastic Inc.*,
   739 F. Supp. 2d 642 (S.D.N.Y. 2011)........................................................8, 10

*Ann Howard Designs, L.P. v. Southern Frills, Inc.*,
   992 F. Supp. 688 (S.D.N.Y. 1998) ................................................................16

*Anti–Monopoly, Inc. v. General Mills Fun Group, Inc.*,
   611 F.2d 296 (9th Cir. 1979) .....................................................................11, 18

*Arnold v. ABC, Inc.*,
   2007 WL 210330 (S.D.N.Y. 2007) ................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................7

*Atari Games Corp. v. Oman*,
   979 F.2d 242 (D.C. Cir. 1992)........................................................................12

*Auscape International v. National Geographic Society*,
   409 F. Supp. 2d 235 (S.D.N.Y. 2004)............................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................7

*Bill Diodato Photography, LLC v. Kate Spade*,
   388 F. Supp. 2d 382 (S.D.N.Y. 2005)............................................................20

*Boyle v. Stephens*, Inc.,
   1998 WL 80175 (S.D.N.Y. 1998), *aff'd*, 21 F. App'x 76 (2d Cir. 2001) ................................8

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004)............................................................................21

*Christian Louboutin S.A. v. Yves Saint Laurent Amerca Holding, Inc.*,
   696 F.3d 206 (2d Cir. 2012)............................................................................17

ii

*Clorox Co. v. Winthrop*,
  836 F. Supp. 983 (E.D.N.Y. 1993) .......................................................................18

*Cole v. Allen*,
  3 F.R.D. 236 (S.D.N.Y. 1942) .............................................................................14

*Computer Associates International, Inc. v. Altai, Inc.*,
  982 F.2d 693 (2d Cir. 1992) ................................................................................21

*Community for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989) .............................................................................................21

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*,
  125 F.3d 28 (2d Cir. 1997) ............................................................................19, 23

*Crane v. Poetic Products Ltd.*,
  593 F. Supp. 2d 585 (S.D.N.Y. 2009), *aff'd on other grounds*, 351 F. App'x 516 (2d
  Cir. 2009) ............................................................................................................22

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ...................................................................................2, 20, 21

*DO Denim, LLC v. Fried Denim, Inc.*,
  634 F. Supp. 2d 403 (S.D.N.Y. 2009) ...........................................................17, 18

*Durham Industries, Inc. v. Tomy Corp.*,
  630 F.2d 905 (2d Cir. 1980) .................................................................9, 10, 11, 12

*Eden Toys, Inc. v. Floralee Undergarments Co.*,
  697 F.2d 27 (2d Cir. 1982), *superseded on other grounds as stated in Weissman v.
  Freeman*, 868 F.2d 1313 (2d Cir. 1989) .............................................................14

*Effie Film, LLC v. Pomerance*,
  2012 WL 6584485 (S.D.N.Y. 2012) .......................................................................9

*Eyal R.D. Corp. v. Jewelex New York Ltd.*,
  784 F. Supp. 2d 441 (S.D.N.Y. 2011) .............................................................22, 23

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
  499 U.S. 340 (1991) ..........................................................................................9, 13

*Flynn v. Health Advocate, Inc.*,
  2004 WL 51929 (E.D. Pa. 2004) ..........................................................................14

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
  409 F. Supp. 2d 259 (S.D.N.Y. 2005) ..................................................................20

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch Inc.*,
  676 F. Supp. 1436 (E.D. Wis. 1987), *aff'd*, 873 F.2d 985 (7th Cir. 1989) ............................ 19

*Gee v. CBS, Inc.*,
  471 F. Supp. 600 (E.D. Pa.), *aff'd*, 612 F.2d 572 (3d Cir. 1979) ............................................. 14

*Hamil America Inc. v. GFI*,
  193 F.3d 92 (2d Cir. 1999) ...................................................................................................... 8

*Hoehling v. Universal City Studios, Inc.*,
  618 F.2d 972 (2d Cir.1980) ...................................................................................................... 10

*Home & Nature Inc. v. Sherman Specialty Co.*,
  322 F. Supp. 2d 260 (E.D.N.Y. 2004) ..................................................................................... 14

*Hudson v. Universal Studios, Inc.*,
  2008 WL 4701488 (S.D.N.Y. 2008), *aff'd*, 369 F. App'x 291 (2d Cir. 2010) ........................ 20

*Incredible Technologies, Inc. v. Virtual Technologies, Inc.*,
  400 F.3d 1007 (7th Cir. 2005) ................................................................................................. 11

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27 (2d Cir. 1995) ........................................................................................................ 15

*Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*,
  266 F.2d 541 (2d Cir. 1959)................................................................................................ 12, 13

*Knitwaves, Inc. v. Lollytogs Ltd.*,
  71 F.3d 996 (2d Cir. 1995) ........................................................................................................ 8

*Kregos v. Associated Press*,
  937 F.2d 700 (2d Cir. 1991) ..................................................................................................... 10

*LaChapelle v. Fenty*,
  812 F. Supp. 2d 434 (S.D.N.Y. 2011) ..................................................................................... 10

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
  113 F.3d 373 (2d Cir. 1997)...................................................................................................... 16

*Le Book Publishing, Inc. v. Black Book Photography, Inc.*,
  418 F. Supp. 2d 305 (S.D.N.Y. 2005)........................................................................................ 7

*Mena v. Fox Entertainment Group, Inc.*,
  2012 WL 4741389 (S.D.N.Y. 2012).......................................................................................9, 10

*Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*,
  497 F. Supp. 2d 541 (S.D.N.Y. 2007).......................................................................................22

*Parker v. Viacom International, Inc.*,
   605 F. Supp. 2d 659 (E.D. Pa. 2009) ...................................................................18, 19

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
   602 F.3d 57 (2d Cir. 1010) .........................................................................................8, 9

*Pirone v. MacMillan, Inc.*,
   894 F.2d 579 (2d Cir. 1990) ..........................................................................................18

*Plunket v. Doyle*,
   2001 WL 175252 (S.D.N.Y. 2001) ................................................................................14

*RBC Nice Bearings, Inc. v. Peer Bearing Co.*,
   676 F. Supp. 2d 9 (D. Conn. 2009), *aff'd on other grounds*, 410 F. App'x 362 (2d Cir.
   2010) .......................................................................................................................21, 22

*RDF Media Ltd. v. Fox Broadcasting Co.*,
   372 F. Supp. 2d 556 (C.D. Cal. 2005) ...........................................................................20

*Reyher v. Children's Television Workshop*,
   533 F.2d 87 (2d Cir. 1976) .....................................................................................10, 11

*Richard Feiner & Co. v. Larry Harmon Pictures Corp.*,
   38 F. Supp. 2d 276 (S.D.N.Y. 1999) .......................................................................22, 23

*Scholastic Inc. v. Speirs*,
   28 F. Supp. 2d 862 (S.D.N.Y. 1998), *aff'd without op.*, 199 F.3d 1323 (2d Cir. 1999) ..........16

*Shevy Custom Wigs v. Aggie Wigs*,
   2006 WL 3335008 (E.D.N.Y. 2006) ..............................................................................16

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004) ..............................................................................................7

*SLY Magazine, L.L.C. v. Weider Publications L.L.C.*,
   529 F. Supp. 2d 425 (S.D.N.Y. 2007), *aff'd*, 346 F. App'x 721 (2d Cir. 2009) .....................21

*Stadt v. Fox News Network LLC*,
   719 F. Supp. 2d 312 (S.D.N.Y. 2010) ...........................................................................22

*Steinberg v. Columbia Pictures Industries, Inc.*,
   663 F. Supp. 706 (S.D.N.Y. 1987) .................................................................................13

*Universal Athletic Sales Co. v. Salkeld*,
   511 F.2d 904 (3d Cir. 1975) ...........................................................................................12

*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
   2012 WL 3240442 (S.D.N.Y. 2012) ...............................................................................17

*Urbont v. Sony Music Entertainment,*
    863 F. Supp. 2d 279 (S.D.N.Y. 2012)...................................................................15

*Volkswagen AG v. Dorling Kindersley Publishing, Inc.,*
    614 F. Supp. 2d 793 (E.D. Mich. 2009)...............................................................18

*Williams v. Crichton,*
    84 F.3d 581 (2d Cir.1996)....................................................................................10

*Yankee Publishing, Inc. v. News America Publishing Inc.,*
    809 F. Supp. 267 (S.D.N.Y. 1992).......................................................................18

*Yurman Design, Inc. v. PAJ, Inc.,*
    262 F.3d 101 (2d Cir. 2001).................................................................................16

### STATUTES & OTHER AUTHORITIES

37 CFR § 202.1 ..........................................................................................................13

15 U.S.C. § 1125(a)....................................................................................................20

17 U.S.C. § 301(a) .....................................................................................................21

17 U.S.C. § 501(b) .....................................................................................................14

17 U.S.C. § 507(b) .....................................................................................................15

Defendant Andrews McMeel Publishing, LLC ("AMP") respectfully submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint filed by plaintiff  Michael Ward d/b/a Brainteaser Publications ("Ward") because the Complaint fails to state a claim against it upon which relief may be granted.

## PRELIMINARY STATEMENT

With his Complaint, Ward attempts to assert copyright infringement, trade dress infringement and unfair competition claims based on his contention that AMP copied the traditional word game "Hangman" from him.  Ward and AMP both publish books containing "scratch-off" versions of the Hangman game.  Hangman, of course, is not original to Ward. Rather, Ward himself describes his books as containing "the classic hangman word game" (Compl. ¶ 11), and he concedes that the game "dates back to the Victorian era."  Ltr. dated Jan. 2, 2013 from E. Lackman to Hon. P. Crotty, at 1; *see, e.g.*, Hangman, http://en.wikipedia.org/wiki/Hangman_%28game%29.  A leading dictionary even defines "hangman" as "a game in which the object is for one player to guess the letters of an unknown word before the player who knows the word creates a stick figure of a hanged man by drawing one line for each incorrect guess."  Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/hangman.

To play this classic game, a player tries to guess a word by selecting letters:

> The word to guess is represented by a row of dashes, giving the number of letters and category of the word.  If the guessing player suggests a letter which occurs in the word, the other player writes it in all its correct positions.  If the suggested letter does not occur in the word, the other player draws one element of the hangman diagram as a tally mark. The game is over when: The guessing player completes the word, or guesses the whole word correctly [or] [t]he other player completes the diagram[.]  This diagram is, in fact, designed to look like a hanging man.

http://en.wikipedia.org/wiki/Hangman_%28game%29.

Although purporting to claim copyright infringement, Ward is really trying to protect the idea of a scratch-off version of hangman.  It is fundamental, however, that ideas are never protected by copyright.  Ward's copyright claim fails because, among other reasons, the only similarities between the parties' books relate to uncopyrightable ideas, functional features, elements of the game not original to Ward, and expression that is unprotectible because it merges with the underlying idea or is excluded as typical to the idea under the doctrine of "scenes à faire."

Ward's attempted claim for trade dress infringement under the Lanham Act fares no better.  Ward's Lanham Act claim is based on the same conduct as his copyright claim—namely, that AMP's books allegedly "lift the layout and style of the text" and the "overall appearance" from Ward's work.  Compl. ¶ 19.  But, the Supreme Court has made clear that such conduct is governed only by copyright laws, not the Lanham Act.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (rejecting application of Lanham Act to expressive work because allowing a claim like Ward's "would create a species of mutant copyright law."). Ward's conclusory pleadings do not, in any event, make out a claim for trade dress infringement even if such a claim were cognizable here.  Among other defects, Ward's Complaint does not identify any elements comprising his supposed trade dress—much less any elements whose primary function was to serve as a designation of origin, as he was required to do.  Moreover, Ward did not and cannot plead that the elements purportedly comprising his trade dress—such as "scratch off circles"—are not functional to the playing of the game.

Finally, Ward's unfair competition claim under New York law is inflicted with the same fatal defects as Ward's Lanham Act claim.  In addition, the claim is preempted by Section 301 of

the Copyright Act.  Thus, the Complaint does not contain any facts which plausibly may give rise to any claim against AMP and it should be dismissed at the outset pursuant to Fed. R. Civ. P. 12(b)(6).

### STATEMENT OF FACTS

Ward is the author of a series of "Scratch & Solve Hangman" books.  Compl. ¶¶ 1, 10. These books contain a scratch-off version of "the classic hangman game."  *Id*. ¶ 11.  Like all versions of the classic game, Ward's version utilizes a row of dashes representing the letters of the word to be guessed—which get filled in when the letters are correctly guessed.  *Id*. Ex. 1. Ward's books also contain the standard "depiction of a stick figure with a noose placed loosely around its neck," which is used to tally wrongly guessed letters.  *Id*. ¶ 14.  Because Ward's books present hangman as a scratch-off game, his pages list the letters of the alphabet, and "include[e] a series of silver scratch-off circles below each letter of the alphabet."  *Id*.  The pages of Ward's books appear as follows:



Penchina Dec. Ex. A.[1]

In 2008, AMP began publishing a series of scratch-off hangman books under its own "POCKET POSH" trademark.  Compl. ¶ 18.  Like all versions of the hangman game, AMP's books include "a hanging-man drawing (including the body outline, noose and gallows)"—but AMP's drawings of the stick figure, noose and gallows differ from Ward's drawings.  *Id.* ¶ 19; *see id.* Ex. 1; *compare* Penchina Dec. Exs. F&G *with id.* Exs. H&I.  And, as any scratch-off version of the game would have, AMP's books contain "rows of scratch-off letters."  Compl. ¶ 19; *see id.* Ex. 1; Penchina Dec. Exs. H&I.  But, in contrast to the layout of Ward's books— which present the alphabet and scratch-off circles in 4 rows—AMP's is presented in 3 rows.  *See* Compl. Ex. 1; *compare* Penchina Dec. Exs. F&G *with id.* Exs. H&I.  Moreover, AMP's rows of letters and scratch-off circles appear below its depiction of the hanging-man, while Ward's rows appear alongside his drawing.  *See* Compl. Ex. 1; *compare* Penchina Dec. Exs. F&G *with id.* Exs. H&I.  AMP's pages also contain a hint for guessing the word and a colored band with

---

[1] This is a true and correct copy of a page from one of Ward's books.  *See* Penchina Dec. Ex. A.  Exhibit 1 to the Complaint, which Ward purports to be a representation of a page from his books, presents an inaccurate depiction of Ward's pages.  Each of Ward's pages contain a distinctive shape jutting out on the top and bottom side of the page at one end (on the left side in the above copy)—and this element does not appear in Exhibit 1.  *Compare* Compl. Ex. 1 *with* Penchina Dec. Exs. F, G (actual editions of Ward books).  This element does not appear in AMP's books.  By omitting this distinctive feature from the depiction of his own pages (indeed, this is the only feature on Ward's pages actually capable of functioning as trade dress), the Complaint does not present a true copy of Ward's pages and attempts to make the parties' pages look more alike than they actually are.  This is not the only falsity of the complaint.  For example, the complaint falsely declares that Ward's "design is so unique that in 1994, the New Zealand Patent Office issued a provisional patent, No. 250,992."  Compl. ¶ 11.  However, the publicly available records of the New Zealand Patent Office, of which this Court may take judicial notice, indicate that no such patent ever was issued.  Rather, Ward simply filed a provisional application No. 250,992, which is an incomplete application upon which no action is taken (and which is filed simply to preserve an earlier filing date in the event a proper application ultimately is submitted).  Ward abandoned his application before completion; thus it was "Voided Pre-Acceptance" and no patent ever was issued.  *See* Penchina Dec. Ex. E.  Similarly, Ward claims to have registered  the copyrights in the books identified in the complaint.  Compl. ¶ 16.  But, Reg. No. TX 7-389-642, which Ward claims for the book "Hangwoman," was issued to Diane Ward, a non-party to this suit and Ward thus lacks standing to assert any claims relating to this work.  *See* Penchina Dec. B.

artwork across the top of each page, both of which are absent from Ward's.  *See* Compl. Ex. 1;
*compare* Penchina Dec. Exs. F&G *with id*. Exs. H&I.  Significantly, AMP's pages are laid out in
traditional portrait (vertical) orientation, while Ward's pages are laid out in landscape
(horizontal) orientation.  *See* Compl. Ex. 1; *compare* Penchina Dec. Exs. F&G *with id*. Exs. H&I.
AMP's pages appear as follows:



*See* Compl. Ex. 1; Penchina Dec. Exs. H&I.

The covers of the parties' respective books bear nothing in common.  In addition to
presenting different artwork, both parties' covers clearly denote the source of the parties' works.
Thus, Ward's books identify Ward as author, and prominently display the "SCRATCH &
SOLVE," and "PUZZLE WRIGHT PRESS" trademarks to denote the books' source.  Penchina
Dec. Exs. F&G.  In contrast, AMP's books prominently display AMP's "POCKET POSH,"
"THE PUZZLE SOCIETY" and Andrews McMeel Publishing trademarks to denote the source

of AMP's hangman game books.  *Id*. Exs. H&I.  Examples of the covers of the parties' books are shown below:



| AMP front cover | AMP back cover |
| Ward front cover | Ward back cover |

## ARGUMENT

A complaint can survive a motion to dismiss only if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Determining whether a claim is plausible, *and not merely possible*, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) .

In this regard, the Supreme Court has set forth "[t]wo working principles" that govern review of Rule 12(b)(6) motions and the pleading standard under Rule 8(a)(2). *Iqbal*, 556 U.S. at 678.  First, the "[t]hreadbare recitals of the elements of a cause of action" in a complaint, "supported by mere conclusory statements, do not suffice" to state a viable claim.  *Id*.  Second, a claim has "facial plausibility when the plaintiff *pleads factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (emphasis added); *see also Twombly*, 550 U.S. at 545 (plaintiff must put forth sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level" in order to survive a motion to dismiss).  Ward's Complaint falls far short of stating any viable claim.

In deciding a motion to dismiss, a court may consider "materials incorporated [into the complaint] by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted). By putting the parties' books at issue (as well as other documents such as Ward's copyright registrations and supposed patent), the content of the books (and other documents) is necessarily incorporated by reference and integral to the Complaint, and may be considered on a motion to dismiss.  *See, e.g.*, *Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 308 (S.D.N.Y. 2005) (on motion to dismiss, parties' respective books "may be considered because they are referenced in the complaint and are crucial to plaintiff's claims").

I.      **WARD FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT**

With his copyright claim, Ward seeks to protect ideas and elements of the hangman game not original to him or which are otherwise unprotectible by copyright.   This claim should be dismissed at the outset.

The Second Circuit has confirmed that a court may "determine[] non-infringement as a matter of law" on "a Rule 12(b)(6) motion to dismiss." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 59 (2d Cir. 1010).   In order to establish a claim of copyright infringement, a plaintiff must establish that "'a substantial similarity exists between the defendant's work and the *protectible* elements of plaintiff's.'"   *Id.* at 63 (emphasis added) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).   "[T]o be actionable, the alleged similarities must arise from 'protected aesthetic expressions original to the allegedly infringed work, [rather than] ... something in the original that is free for the taking.'"   *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 654 (S.D.N.Y. 2011) (citation omitted).   Thus, to determine whether two works are substantially similar, a court "'must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar.'"   *Peter F. Gaito*, 602 F.3d at 66 (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)).   Therefore, when comparing the parties' works on a motion to dismiss, "a court must filter out the unprotected elements of the copyrighted work—*e.g.*, its elements that are unoriginal or that 'merge' with ideas or concepts—before comparing the copyrighted and the allegedly infringing works."   *Boyle v. Stephens*, Inc., 1998 WL 80175, at *3 (S.D.N.Y. 1998), *aff'd*, 21 F. App'x 76 (2d Cir. 2001); *see, e.g.*, *Allen*, 739 F. Supp.  2d at 655 n.122 ("the question of substantial similarity can be resolved as a matter of law on a Rule 12(b)(6) motion to dismiss" and "any unprotectible elements in plaintiff's work must be excluded before substantial similarity can be assessed.") (internal marks and citations

omitted); *Effie Film, LLC v. Pomerance*, 2012 WL 6584485, at *14, 20 (S.D.N.Y. 2012) (on motion to dismiss "we must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar" and noting that "copyright analysis requires an initial separation of protectible from unprotectible elements") (internal marks and citations omitted); *Mena v. Fox Entm't Grp., Inc.*, 2012 WL 4741389, at *4 (S.D.N.Y. 2012) (To survive motion to dismiss, "[w]here a work is not 'wholly original' because it incorporates elements from the public domain, '[w]hat must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation.'") (citation omitted).   In sum, "it is entirely appropriate for a district court to resolve th[e] question of substantial similarity as a matter of law" and dismiss a complaint when "the similarity between two works concerns only the non-copyrightable elements of the plaintiff's work." *Peter F. Gaito*, 602 F.3d at 63 (internal marks and citation omitted).  Here, any similarities between Ward's and AMP's books relate to non-copyrightable elements of Ward's books and his copyright claim accordingly fails as a matter of law.

It is elementary that in order to be protected by copyright, a work must be original.  *See, e.g., Durham Indus., Inc. v. Tomy Corp.*,  630 F.2d 905, 910 (2d Cir. 1980) ("Although novelty, uniqueness and ingenuity are not required, independent creation is").  "The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  It is also fundamental that "[c]opyright protection cannot be claimed for mere ideas, concepts, or principles, which are permanent denizens of the public domain." *Mena*, 2012 WL 4741389 at *3.

Moreover, "under the doctrine of scenes à faire, 'elements of [a work] that flow naturally and necessarily from the choice of a given concept cannot be claimed as original.'" *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 440 (S.D.N.Y. 2011) (citation omitted); *see, e.g., Allen*, 739 F. Supp. 2d at 654 ("[T]he law is clear that a copyright does not protect an idea, but only the expression of an idea, and therefore scenes à faire, sequences of events that necessarily result from the choice of a setting or situation, do not enjoy copyright protection.") (internal marks and citations omitted) .  As one court explained:

> One major exception to copyrightable subject matter is "sequences of events that necessarily result from the choice of a setting or situation." *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir.1996). "Copyrights ... do not protect thematic concepts or scenes which necessarily must follow from certain similar plot situations." *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976). These elements are commonly called scenes à faire. Courts have consistently held that scenes à faire are not copyrightable as a matter of law "[b]ecause it is virtually impossible to write about a particular historical era or fictional theme without employing certain 'stock' or standard literary devices." *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir.1980).

*Mena*, 2012 WL 4741389 at *3.  "[W]here the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying."  *Durham Indus.*, 630 F.2d at 913.

Similar to scenes à faire, copyright protection does not extend to expression that has merged with the idea it seeks to express.  "The fundamental copyright principle that only the expression of an idea and not the idea itself is protectable has produced a corollary maxim that even expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself."  *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991) (citations omitted); *see, e.g., Reyher*, 533 F.2d at 91 ("'[S]imilarity of expression ... which necessarily results from

the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity.'") (citation omitted).

Likewise, copyright does not extend to any functional aspects of a work.  "[C]opyright protection extends only to the artistic aspects, but not the mechanical or utilitarian features of a protected work." *Durham Indus.* 630 F.2d at 913; *see, e.g., Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1012 (7th Cir. 2005) ("Useful articles and functional elements are also excluded from copyright protection.").  For example, "buttons . . . are the mechanisms that make the games work" and are not copyrightable.  *Durham Indus.* 630 F.2d at 915.

Ward's copyrights cannot prevent AMP from publishing scratch-off hangman games.  It is beyond dispute that "ideas, such as a game concept, cannot be copyrighted." *Anti–Monopoly, Inc. v. Gen. Mills Fun Grp., Inc*., 611 F.2d 296, 300 n.1 (9th Cir. 1979).  Moreover, there can be no infringement where "the simplicity of the games makes the subject matter extremely narrow, and the distinction between substance and arrangement blurs." *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co*., 513 F.2d 1183, 1188-89 (2d Cir. 1975).

Ward contends that AMP's books copy "the hanging man drawing," "rows of scratch-off letters," and "even the appearance of the typefaces" from Ward's books.  Compl. ¶ 19.  But, the elements Ward seeks to protect are not copyrightable because they are unoriginal to Ward, functional, and merge with or naturally flow from the idea of doing a scratch off version of the classic hangman game.  Indeed, these features are not even covered by Ward's copyright registrations, which on their face list "text"—but do not specify any look or design—as the work of authorship protected by Ward's registrations. *See* Penchina Dec. Exs. B-D.

AMP's rendition of the hanging man drawing differs substantially from Ward's in both appearance and where it is laid out on the parties' respective pages. *See* Compl. Ex 1; *compare*

Penchina Dec. Exs. F&G *with id*. Exs. H&I.  The only similarity is that both parties' works

contain a hanging man drawing.  But, a drawing of a hanging stick figure is an essential element

of the classic hangman game and is wholly unoriginal to Ward.  *See, e.g.*, <u>Hangman</u>,

<u>http://en.wikipedia.org/wiki/Hangman_%28game%29</u>.  Because such a drawing is central to the

idea of the hangman game, and flows naturally and necessarily from the hangman concept, it is

unprotectible scenes à faire.  *Cf. Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 909 (3d

Cir. 1975) ("The only real similarities are *the use of stick figures* in both charts and the

corresponding positions of the figures for each exercise. The use of stick figures involves only

that minimal amount of creativity discussed earlier, and the position of the stick figures must

necessarily be similar because both express the same idea. The plaintiff and defendant machines

are so similar in operation that the body positions must be similar.  In short, a lay observer could

not find such a substantial similarity between the two charts as would amount to an appropriation

of the plaintiff's independent work.  The ideas are similar, but the expressions are not

substantially so") (emphasis added).

Scratch-off letters are a functional feature of Ward's games and are unprotectible as such.

The game is played by guessing which letters appear in the word; when a letter is guessed, the

covering layer of the circle corresponding to that letter is scratched off to reveal if the guessed

letter appears in the word (and if so, where it appears).  Thus, the scratch-off letters "are the

mechanisms that make the games work" and have "an intrinsic utilitarian function that is not

merely to portray the appearance of the article or to convey information."  *Durham Indus.*, 630

F.2d at 915.  Nor are the circular shapes or the silver color of the scratch-off letters protectible.

*Atari Games Corp. v. Oman*, 979 F.2d 242, 247 (D.C. Cir. 1992) ("'simple geometric shapes and

coloring alone are per se not copyrightable.'") (citation omitted); *Kitchens of Sara Lee, Inc. v.*

*Nifty Foods Corp.*, 266 F.2d 541, 545 (2d Cir. 1959) ("'Of course, plaintiff can have no monopoly in words as such, nor can it claim any exclusive right in . . . colors, type styles, circular and rectangular shapes . . . .'") (citation omitted).  Moreover, there is nothing protectible about Ward's arrangement of the alphabet in in rows in alphabetical order.  *Feist*, 499 U.S. at 362 (rejecting work as insufficiently original where publisher "takes the data provided by its subscribers and lists it alphabetically.").  Although the threshold for originality needed to qualify for copyright is low, an arrangement "cannot be so mechanical or routine as to require no creativity whatsoever."  *Id*.  Presenting the scratch-off circles in rows corresponding to the letters of the alphabet " could not be more obvious" and "lacks the modicum of creativity necessary to transform [it] into copyrightable expression."  *Id*.

Ward's assertion that AMP copied the typefaces from his books is just wrong.  Ward's typeface contains serifs, while AMP's does not.  And, Ward's typeface is printed in black, while AMP's are brightly colored to match the band of color appearing across the top of the pages of AMP's books.  *See, e.g.,* Penchina Dec. Ex. I (pink lettering coordinated with pink circles across top of page).  More significantly, however, typefaces simply are not protected by copyright.  *See*, e.g., *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F. Supp. 706, 711 n.2 (S.D.N.Y. 1987) ("typeface is not a subject of copyright").  Indeed, the Code of Federal Regulations expressly identify "works not subject to copyright," which include "mere variations of typographic ornamentation, lettering or coloring" and "[t]ypeface." 37 CFR § 202.1.

In sum, Ward's Complaint seeks to prevent AMP from employing the non-copyrightable idea for a scratch-off version of the classic hangman game. Because Ward cannot establish that AMP's books bear substantial similarity to any protectable aspects of his books, Ward cannot state a claim for copyright infringement.

Ward's claim cannot be saved by his assertion that "[i]n the first three 'Pocket Posh' books alone, over twenty percent of the answers are identical to those in previously published S&S Hangman Books."  Compl. ¶ 20.  Copyright infringement occurs when a particular work is copied from and is substantially similar to another work.  There are "over two dozen" S&S Hangman Books, and Ward has "obtained over two dozen registration certificates for the series." *Id.* ¶ 16.  The fact that the simple word answers in three of AMP's books may coincide with words appearing somewhere in the more than two dozen of Ward's books does not and cannot establish that any of the AMP books is substantially similar to any of the Ward books.  "To state a claim for copyright infringement under . . . Rule 8, the Complaint must state 'which *specific* original work is the subject of the copyright claim . . . .'" *Flynn v. Health Advocate, Inc.*, 2004 WL 51929, at *12 (E.D. Pa. 2004) (emphasis in original) (quoting *Gee v. CBS, Inc.*, 471 F. Supp. 600, 643 (E.D. Pa.), *aff'd*, 612 F.2d 572 (3d Cir. 1979)); *see, e.g., Home & Nature Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004) complaint must allege "which specific original works form the subject of the copyright claim.").  Courts in this District have made clear that simply identifying a batch of works and asserting that defendants copied from those works does not cure the deficiency. *See, e.g., Plunket v. Doyle*, 2001 WL 175252, at *4 (S.D.N.Y. 2001) ( "[A]llegations that defendant copied from any of six books lacked sufficient specificity") (citing *Cole v. Allen*, 3 F.R.D. 236, 237 (S.D.N.Y. 1942)).  The result should be no different here.[2]

_____

[2] Even if Ward had been able to state a copyright claim, that claim should be dismissed to the extent it is based on the book *Hangwoman* because Ward lacks standing to assert copyright claims for that title.  "The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Floralee Undergarments Co.*, 697 F.2d 27, 32 (2d Cir. 1982), *superseded on other grounds as stated in Weissman v. Freeman,* 868 F.2d 1313 (2d Cir. 1989); *see also* 17 U.S.C. § 501(b) (only the "owner of an exclusive right

## II.  WARD FAILS TO STATE A CLAIM FOR TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT

Ward's second claim alleges that AMP's books "appropriate to AMP the valuable trade dress rights" of Ward in violation of  Section 43(a) of the Lanham Act.  Compl.  ¶ 30. This claim should be dismissed because the Complaint does not articulate the elements of any protectable trade dress, AMP made no source identifying use of anything belonging to Ward, and Ward's claims are cognizable, if at all, only under the Copyright Act.

### A.    Ward Has No Protectable Trade Dress

A plaintiff claiming trade dress infringement under section 43(a) must prove "(1) that its dress is distinctive and (2) that a likelihood of confusion exists between its product and the defendant's product."  *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 31 (2d Cir. 1995).  Here, Ward's assertions fail, as a matter of law, to sufficiently articulate the elements of his alleged "trade dress."

---

under a copyright is entitled . . . to institute an action for any infringement").  Although Ward alleges that he obtained Copyright Registration TX 7-389-642 for *Hangwoman* (Compl. ¶ 16), the records of the Copyright Office indicate that this registration was issued to Diane Ward, a non-party to this suit.  *See* Penchina Dec. Ex. B.  Because Diane Ward, and not Ward, owns the copyright, and nothing in the complaint indicates that Ward holds any license to the title, Ward lacks standing to pursue any copyright infringement claims relating  to the book *Hangwoman*.

In addition, Ward's claims are barred in whole or in part by the three-year statute of limitations applicable to claims of copyright infringement.  *See* 17 U.S.C. § 507(b).  Ward contends that "in or around late 2008, AMP began publishing . . . several hangman books."  Compl. ¶ 18.  Although there is some disagreement as to whether the statute of limitations for copyright claims begins to run when the infringement occurs (the "injury rule") or when the infringement is discovered (the "discovery rule"), "[s]ince *Auscape* [*Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004)], a majority of district courts in the Southern District of New York have followed Judge Kaplan's lead and applied the injury rule to infringement claims."  *Urbont v. Sony Music Entm't*, 863 F. Supp. 2d 279, 282  (S.D.N.Y. 2012).  Thus, claims relating to infringing acts occurring more than three years before Ward filed suit (*i.e.,* before October 26, 2009) are barred.  The complaint does not identify any specific acts of infringement allegedly occurring since Oct. 26, 2009.

In *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116-17 (2d Cir. 2001), the Second Circuit made clear that not only must a trade dress plaintiff "articulate the design elements that compose the trade dress," but that a plaintiff may not use the facile approach of describing the "overall look" of the alleged trade dress, and that "*an articulation of the specific elements*" is required. (Emphasis in original); *see, e.g., Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) ("[F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the *specific elements* which comprise its distinct dress" (emphasis added)).  Moreover, a plaintiff must do more than identify which features of its design are distinctive, it must describe "*how* they are distinctive." *Shevy Custom Wigs v. Aggie Wigs*, 2006 WL 3335008, at *5 (E.D.N.Y.  2006) (emphasis in original).

Moreover, "trade dress protection extends only to those designs that are 'likely to serve *primarily* as a designator of origin of the product.'" *Ann Howard Designs, L.P. v. S. Frills, Inc.*, 992 F. Supp. 688, 691 (S.D.N.Y. 1998) (citation omitted; emphasis in original); *see also, e.g., Yurman*, 262 F.3d at 115 (must show "that in the minds of the public, the primary significance of [the design] is to identify the source of the product") (internal marks and citation omitted); *Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 871 n.5 (S.D.N.Y. 1998) ("Second Circuit precedent 'makes clear that, in order to prevail on a claim for trade dress infringement, a plaintiff must do more than demonstrate that the appearance of its product serves *some* source identifying function. It must demonstrate that the *primary* purpose behind the design was to identify its product's source.'") (emphasis in original; alterations and citation omitted), *aff'd without op.*, 199 F.3d 1323 (2d Cir. 1999).

Here, Ward has utterly failed to identify which features of his books constitute his trade dress.  Rather, he simply states in conclusory fashion that his books "contain the same unique

style and trade dress."  Compl. ¶ 14.  This falls far short of providing "a precise expression of the character and scope of the claimed trade dress," as he was required to do.  *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 2012 WL 3240442, at *3-4 (S.D.N.Y. 2012) (internal marks and citations omitted).  Ward's Complaint does not even identify the specific elements that comprise his supposed trade dress—much less show that the primary purpose for inclusion of those elements was to act as an identification of source.

Ward's claim is not saved by his allegation that his books each contain "a series of silver scratch-off circles below each letter of the alphabet, depicted in a few rows."  Compl. ¶ 14.  His Complaint failed to show how the scratch-off circles are distinctive or that their primary purpose is to identify the source of Ward's product.   To the contrary, the scratch-off circles are an integral and functional part of the game for which trade dress protection simply is not available. *See, e.g., Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 219 (2d Cir. 2012) ("a product feature is considered to be 'functional' in a utilitarian sense if it is . . . 'essential to the use or purpose of the article'" and "[a] feature is essential 'if [it] is dictated by the functions to be performed' by the article."  Where feature is functional, it "will ordinarily render the feature ineligible for trademark protection.") (citations omitted).

"The law is well-settled that a plaintiff alleging infringement or dilution of an unregistered trade dress must prove that its alleged trade dress is nonfunctional," and "conclusory assertions that a product's design is non-functional are insufficient to meet the plaintiff's burden."  *Urban Grp.*, 2012 WL 3240442 at *6.  For example, in *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009), the court rejected a conclusory allegation, similar to Ward's here, that the plaintiff's design was "unique and nonfunctional" because the complaint "proffer[ed] no factual allegations demonstrating that the design is not

aesthetically or otherwise functional."   Ward's Complaint likewise does not—and indeed could not—provide any facts showing that the scratch-off circles (or any other element for which he seeks trade dress protection) is not a functional element of the scratch-off hangman game.

**B.      AMP Made No Trademark Use of Anything Belonging to Ward**

Even assuming Ward had protectable trade dress, courts have made clear that not every unauthorized use is actionable.  Rather, the Lanham Act is concerned only where a defendant has employed a plaintiff's mark as a designation of the source of defendant's own goods or services. *See, e.g., Clorox Co. v. Winthrop*, 836 F. Supp. 983, 991 (E.D.N.Y. 1993) (trademark laws only protect the trademark's 'source-denoting function'") (citing *Anti-Monopoly, Inc.,*, 611 F.2d at 301) ("It is the source-denoting function which trademark laws protect, and nothing more."). "If a defendant uses a trademark in a non-trademark way, the laws of trademark infringement and false designation are not implicated." *Volkswagen AG v. Dorling Kindersley Publ'g, Inc.,* 614 F. Supp. 2d 793, 808-09 (E.D. Mich. 2009).  And, "[i]f the context or manner of the use does not suggest that the trademark is being used to indicate source or origin of publication, there will be no consumer confusion." *Yankee Publ'g, Inc. v. News Am. Publ'g Inc.,* 809 F. Supp. 267, 273 (S.D.N.Y. 1992); *see also, e.g., Pirone v. MacMillan, Inc.,* 894 F.2d 579, 583 (2d Cir. 1990) ("Whatever rights [plaintiff] may have in the mark 'Babe Ruth,' [defendants'] use of Ruth's name and photographs can infringe those rights only if that use was a 'trademark use,' that is, one indicating source or origin.").

Here, AMP's books do not use anything belonging to Ward to denote the source of the books.  Rather, Ward complains that the contents of AMP's books are similar to the content of his books.  This simply is not actionable.  In *Parker v. Viacom International, Inc.,* 605 F. Supp. 2d 659 (E.D. Pa. 2009), for example, the plaintiff asserted that the television show *The Pick Up*

*Artist* ("TPUA") amounted to a false designation of origin under the Lanham Act because the show used the term "pivot" in connection with dating advice in the same manner for which plaintiff had coined the term as a trademark for his own "seduction services." The court rejected this claim, among other reasons, because plaintiff's mark was used by defendant as *part* of the challenged show, not to designate the source of origin of that show: "Plaintiff's term 'pivot' is a component part of TPUA, but not the 'origin of good or service' itself. Accordingly, because Defendant's production of TPUA is the 'origin of the good' at issue, rather than Plaintiff's term 'pivot,' Plaintiff failed to satisfy the false designation of origin element." *Id.* at 666.

Likewise, here the challenged game designs are components of the AMP's books, but they do not designate their source. Rather, the books' source is clearly identified on the books' covers. *See* Penchina Dec. Exs. H&I (identifying, *inter alia,* Andrews McMeel Publishing, Pocket Posh and The Puzzle Society). Thus, as the Second Circuit has observed, "[t]he non-trademark use of the challenged phrase and the defendants' good faith are both evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks." *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.,* 125 F.3d 28, 30 (2d Cir. 1997); *see also, e.g., Arnold v. ABC, Inc.,* 2007 WL 210330, at *3(S.D.N.Y. 2007) ("[T[he identity of [the] show, and the fact that the show's source is ABC and not plaintiff, is clearly evidenced by the prominent display of the show's title, ABC's own famous and recognizable trademark, and large photos of the show's three stars."). Because AMP did not use Ward's design to designate a source, AMP could not have violated the Lanham Act.[3]

---

[3] Moreover, even if any features of AMP's games could be deemed to be capable of denoting source, any possibility of confusion posed by that feature is negated by AMP's prominent use of its own marks on the covers of its books, which clearly identify AMP—and not Ward—as the source of those books. *See, e.g., G. Heileman Brewing Co., Inc. v. Anheuser-Busch Inc.*, 676 F. Supp. 1436, 1494 (E.D. Wis. 1987) ("The weight of authority holds that the conspicuous use of housemarks virtually dispels any confusion that might otherwise result from the use of identical marks."), *aff'd*, 873 F.2d 985 (7th Cir. 1989).

**C.**     **Ward's Claim is Only Cognizable Under Copyright Law**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "prohibits false designation of the origin of goods in interstate commerce and protects only 'the producer of *the tangible goods* that are offered for sale, and *not [ ] the author* of any idea, concept or communication embodied in those goods.'" *Bill Diodato Photography, LLC v. Kate Spade*, 388 F. Supp. 2d 382, 395 (S.D.N.Y. 2005) (emphasis added) (quoting *Dastar,* 539 U.S. at 29).

Ward's Lanham Act claim is based on the same conduct as his copyright claim— namely, that the AMP books allegedly "incorporate the entire concept, feel, and design" of Ward's books. Compl. ¶ 18.  But, the Supreme Court has made clear that such conduct is governed only by copyright laws, not the Lanham Act.  *See Dastar,* 539 U.S. at 31 (rejecting claim that "in marketing and selling [a video] as its own product without acknowledging its nearly wholesale reliance on the Crusade television series, Dastar has made a 'false designation of origin'"). The Court held that "as used in the Lanham Act, the phrase 'origin of goods' is . . . incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain," *id.* at 32, and thus allowing a claim similar to Ward's here "would create a species of mutant copyright law." *Id.* at 34.  "Since *Dastar*, Lanham Act claims arising from the alleged copying of creative work have been clearly foreclosed." *Hudson v. Universal Studios, Inc.*, 2008 WL 4701488, at *8 (S.D.N.Y. 2008), *aff'd*, 369 F. App'x 291 (2d Cir. 2010); *see also, e.g., Agence France Press v. Morel,* 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) ("In *Dastar,* the Supreme Court admonished that section 43(a) of the Lanham Act . . . cannot be invoked as an end run around copyright laws or to add another layer of protection to copyright holders"); *Freeplay Music, Inc. v. Cox Radio, Inc.,* 409 F. Supp. 2d 259, 263 (S.D.N.Y. 2005) ("The right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition."); *RDF Media Ltd. v. Fox Broad. Co.,* 372 F. Supp. 2d 556, 562-64 (C.D. Cal.

2005) (relying on *Dastar* to reject trade dress protection for "total image and appearance" of party's work). Notwithstanding that, as demonstrated above, Ward does not have a viable copyright claim, as a matter of well-established law, a Copyright Act claim is the only cause of action available to address AMP's alleged reproduction of Ward's design.

## III.   WARD FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION UNDER NEW YORK LAW

Ward's unfair competition claim is barred for the same reasons that his Lanham Act claim is fatally defective. As courts have made clear, "the standard for federal mark infringement and unfair competition is virtually identical to that under New York common law," and thus "[b]ecause plaintiff's claims fail under the Lanham Act, these claims necessarily also fail under New York common law." *SLY Magazine, L.L.C. v. Weider Publ'ns L.L.C.*, 529 F. Supp. 2d 425, 443 (S.D.N.Y. 2007), *aff'd*, 346 F. App'x 721 (2d Cir. 2009). Moreover, this claim is preempted by the federal copyright law.

Section 301 of the Copyright Act expressly reserves to Congress the field of regulation over claims relating to works of authorship which claims seek to vindicate rights equivalent to those provided by the copyright law. See 17 U.S.C. § 301(a); *see also, e.g., Comty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (Copyright Act creates uniform law "by broadly pre-empting state statutory and common-law copyright regulation"). Generally, a claim is preempted unless it includes an extra element that makes it "qualitatively different from a copyright infringement claim." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305-06 (2d Cir. 2004). The "'extra element'" must be something in addition "'to the acts of reproduction, performance, distribution or display.'" *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (internal marks and citation omitted). Moreover, "[t]he Second Circuit takes 'a restrictive view' of the extra elements that transfer an otherwise equivalent claim

into one that is qualitatively different from a copyright infringement claim." *RBC Nice Bearings, Inc. v. Peer Bearing Co.,* 676 F. Supp. 2d 9, 34 (D. Conn. 2009), *aff'd on other grounds*, 410 F. App'x 362 (2d Cir. 2010).

Ward's unfair competition claim is based on the identical conduct giving rise to his copyright claim – indeed, his state-law claim expressly incorporates the facts pleaded in his copyright claim (Compl. ¶ 32) – and presents no extra elements.  This claim is directed at AMP's alleged unauthorized reproduction and use of the contents of Ward's books and is preempted.  In *Orange County Choppers, Inc. v. Olaes Enterprises, Inc.,* 497 F. Supp. 2d 541 (S.D.N.Y. 2007), the plaintiff contended that the defendant's unauthorized copying and use of plaintiff's designs, violated New York's unfair competition law.  Finding that claim to be preempted by copyright law, the court stated that: "It is axiomatic that unfair competition . . . claims grounded solely in the copying of a plaintiff's protected expression are preempted by the Copyright Act."  *Id.* at 556 (internal marks and citations omitted).  Likewise, in *Eyal R.D. Corp. v. Jewelex New York Ltd.,* 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011), the court rejected a plaintiff's attempt "to dress up its claim that [defendant] copied its design" as a New York common law unfair competition claim. There, like here, the plaintiff "pleaded—in a most conclusory fashion—that [defendant's] copying has created a likelihood of confusion" between the parties' products.  *Id.* (internal marks and citation omitted).  Rejecting that claim, the court concluded that "[t]he alleged likelihood of confusion, arises only from [defendant's] alleged copying, and thus is preempted."  *Id.*; *see, e.g., Crane v. Poetic Prods. Ltd.,* 593 F. Supp. 2d 585, 598-99 (S.D.N.Y. 2009) (common law unfair competition claim preempted), *aff'd on other grounds*, 351 F. App'x 516 (2d Cir. 2009); *Stadt v. Fox News Network LLC,* 719 F. Supp. 2d 312, 322 (S.D.N.Y. 2010) (unfair competition claim preempted); *Richard Feiner & Co. v. Larry Harmon Pictures Corp.,* 38 F. Supp. 2d 276, 280

(S.D.N.Y. 1999) ("the New York common law of unfair competition requires no element other than those necessary to establish a copyright infringement claim."). The result should be no different here.[4]

## CONCLUSION

For the foregoing reasons, AMP respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety, together with such other and further relief as the Court deems just and appropriate.


Dated:  February 4, 2013                    Respectfully submitted,

                                            LEVINE SULLIVAN KOCH & SCHULZ, LLP



                                            By: _____

                                                 Robert Penchina
                                                 rpenchina@lskslaw.com
                                                 321 West 44th Street, Suite 1000
                                                 New York, NY 10036
                                                 Tel:  (212) 850-6109
                                                 Fax:  (212) 850-6299

                                            *Attorneys for Defendant Andrews McMeel
                                            Publishing, LLC.*

---

[4] As in *Eyal R.D.*, Ward's unfair competition claim is also subject to dismissal because Ward "did not allege any facts to support the claim that [defendant's] actions were done in bad faith—again, apart from the copying itself—which is an element required to show unfair competition under New York common law." *Eyal R.D.*, 784 F. Supp. 2d at 447.  To the contrary, AMP's good faith is conclusively "evidenced by the fact that the source of [AMP's] product is clearly identified by the prominent display of [AMP's] own trademarks" on the covers of its books. *Cosmetically Sealed,* 125 F.3d at 30.