UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL WARD d/b/a BRAINTEASER
PUBLICATIONS,                                    Case No. 12 Civ. 07987 (PAC)

                    Plaintiff,                              ECF Case

        -against-

ANDREWS MCMEEL PUBLISHING, LLC,

                    Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS</u>**

Eleanor M. Lackman
Joshua S. Wolkoff
COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 34th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
JWolkoff@cdas.com
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ....................................................................................................................... 7

      I.      BRAINTEASER'S COMPLAINT SUFFICIENTLY PLEADS A
             PLAUSIBLE CLAIM FOR COPYRIGHT INFRINGEMENT ....................... 7

      II.     BRAINTEASER HAS PROPERLY STATED A COLORABLE
             CLAIM FOR TRADE DRESS INFRINGEMENT ....................................... 16

      III.    BRAINTEASER'S UNFAIR COMPETITION CLAIM IS
             PROPERLY PLEADED AND NOT PREEMPTED BY THE
             COPYRIGHT ACT .............................................................................. 21

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*7777388 Ontario Ltd. v. Lencore Acoustics Corp.*,
    105 F. Supp. 2d 56 (E.D.N.Y. 2000) ....................................................................18

*Andrews McMeel Publishing, LLC v. Publications Int'l, Ltd.*,
    11 Civ. 00419 (W.D. Mo. Apr. 20, 2011) ..............................................................17

*BanxCorp v. Costco Wholesale Corp.*,
    723 F. Supp. 2d 596 (S.D.N.Y. 2010)....................................................................11

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).....................................................................................4

*Chirogianis, A.I.A. v. Parangi*,
    11 CV 953, 2011 WL 6179706 (S.D.N.Y. Dec. 12, 2011)...................................8, 9

*Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*,
    413 F.3d 324 (2d Cir. 2004)....................................................................................11

*Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*,
    696 F.3d 206 (2d Cir. 2012)....................................................................................17

*Coach, Inc. v. We Care Trading, Co., Inc.*,
    67 Fed. Appx. 626 (2d Cir. 2002) ..........................................................................18

*Colour & Design v. U.S. Mfg. Corp.*,
    04CIV8332 (MBM), 2005 WL 1337864 (S.D.N.Y. June 3, 2005) ........................21

*Coquico, Inc. v. Rodriquez-Miranda*,
    562 F.3d 62 (1st Cir. 2009).....................................................................................11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..............................................................................................20, 21

*Eckes v. Card Prices Update*,
    736 F.2d 859 (2d Cir. 1984)....................................................................................14

*Eliya, Inc. v. Kohl's Dept. Stores*,
    06 Civ. 195 (GEL), 2006 WL 2645196 (S.D.N.Y. Sept. 13, 2006) .......................19

*Ellis v. Jean*,
    10 Civ. 8837 (LMM) ,2011 WL 6368555 (S.D.N.Y. Dec. 16, 2011) ................9, 12

*Great American Fun Corp. v. Hosung New York Trading Inc.*,
    935 F. Supp. 488 (S.D.N.Y. 1996) ..........................................................................9

*Hofmann v. Kleinhandler*,
    93 Civ. 5638, WL 240335 (S.D.N.Y. May 31, 1994)............................................17

*Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*,
    832 F.2d 1311 (2d Cir. 1987)......................................................................20

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
    71 F.3d 996 (2d Cir. 1995)..........................................................9, 10, 11, 14

*LaChapelle v. Fenty*,
    812 F. Supp. 2d 434 (S.D.N.Y. 2011)....................................................10, 11, 15

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir. 1995)........................................................................14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    340 F. Supp. 2d 415 (S.D.N.Y. 2003).............................................................19

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
    425 F. Supp. 2d 402 (S.D.N.Y. 2006).............................................................20

*Metrokane, Inc. v. The Wine Enthusiast*,
    160 F. Supp. 2d 633 (S.D.N.Y. 2001).............................................................18

*Orange County Choppers, Inc. v. Olaes Enterprises, Inc*
    497 F. Supp. 2d 541, 556 (S.D.N.Y. 2007)......................................................22

*Pearson Education, Inc. v. Boundless Learning, Inc.*,
    --F.Supp.2d--, 2013 WL 357631 (S.D.N.Y. Jan. 30, 2013)....................................20

*Pernod Ricard USA, LLC v. Luxco, Inc.*,
    10 Civ. 1567 (PAC) (S.D.N.Y. Feb. 18, 2011)...................................................16

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)..........................................................................8

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*,
    274 F.2d 487 (2d Cir. 1960)........................................................................8

*Profoot, Inc. v. MSD Consumer Care, Inc.*,
    Civ. No. 11-7079 (AET) 2012 WL 1231984 (D.N.J. Apr. 12, 2012).........................21

*Psihoyos v. John Wiley & Sons, Inc.*,
    11 Civ. 1416 (JSR), 2011 WL 4916299 (S.D.N.Y. Oct. 14, 2011) ........................15

*Raffoler, Ltd. v. Peabody & Wright, Ltd.*,
    671 F. Supp. 947 (E.D.N.Y. 1987) ..............................................................22

*Rescuecom Corp. v. Google Inc.*,
   562 F.3d 123 (2d Cir. 2009)............................................................................3

*S B ICE, LLC v. MGN, LLC*,
   08 Civ. 3164 (DLC), 2008 WL 4682152 (S.D.N.Y. Oct. 20, 2008)........................16

*Sec. & Exch. Comm'n v. Rapp*,
   304 F.2d 786 (2d Cir. 1962)............................................................................17

*Slep-Tone Ent'mt Corp. v. Arrowood*,
   10-cv-592, WL 4482082 (S.D. Ohio Sept. 26, 2011).........................................21

*Spry Fox LLC v. LOLApps*,
   C12-147RAJ, WL 5290158 (W.D. Wash. Sept. 18, 2012)...................................11

*Stone v. Williams*,
   970 F.2d 1043 (2d Cir. 1992)..........................................................................15

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
   863 F. Supp. 2d 394 (D.N.J. 2012) ..............................................................14, 20

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
   338 F.3d 127 (2d Cir. 2003)............................................................................15

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992)......................................................................................17

*Universal Athletic Sales Co. v. Salkeld*,
   511 F.2d 904 (3d Cir. 1975)............................................................................13

*Whimsicality, Inc. v. Rubie's Costume Co., Inc.*,
   891 F.2d 452 (2d Cir. 1989).............................................................................7

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001)..........................................................................9, 18

*Yurman Studio, Inc. v. Castaneda*,
   591 F. Supp. 2d 471 (S.D.N.Y. 2008)..................................................................7

**STATUTES**

15 U.S.C. § 1125(a) ......................................................................................19

17 U.S.C. § 410(c) .........................................................................................7

17 U.S.C. § 501(b) .......................................................................................15

17 U.S.C. § 507..........................................................................................15

**OTHER AUTHORITIES**

4 McCarthy on Trademarks and Unfair Competition § 23:51 (4th ed.) .......................................20

5 McCarthy on Trademarks Unfair Competition § 27:78 (4th ed.) ...............................................20

6 Patry on Copyright § 18:50.......................................................................................................21

Fed. R. Civ. P. 15(b) ...................................................................................................................17

# PRELIMINARY STATEMENT

Michael Ward d/b/a Brainteaser Publications ("Brainteaser") filed the present action to enforce its rights in its creative rendition of the game of hangman, and against willful free-riding on the goodwill of Brainteaser's highly successful franchise of works that consistently bears a unique and recognizable design across its dozens of books in the series. Andrews McMeel Publishing, LLC's ("AMP") motion to dismiss, rather than accepting the allegations and works as they are, disregards the well-pleaded allegations that give Brainteaser's copyright, trade dress and unfair competition claims effect. The motion instead seeks to jump ahead to a later stage in the case, at times almost testifying as to what the proof at trial will show rather than identifying how Brainteaser's claims are implausible. Such an approach is improper generally. And in AMP's case, it fails completely.

The fundamental position underlying AMP's motion to dismiss the copyright claim is that, according to AMP, the only commonality between the works is the idea of the hangman game. But that is not true. While both do share the idea of "hangman," the similarities do not end there. Indeed, as AMP's own publications and references confirm (and as will be fleshed out in discovery), the hangman game idea is amorphous, making it susceptible to any number of forms of expression. As detailed in the Complaint, the parties' works share a substantial amount of the same type of expression, and AMP cannot establish at this posture – and will not be able to establish at trial – that the "idea" of every hangman game must necessarily include, *inter alia*, expressive components such as the depiction of a hanging man in dashed lines with a noose loosely tied around its neck, single-color printing, printed letters placed over rows of silver foil scratch-off circles and the general look-and-feel that both works share.[1]

---

[1] As will be established in the appropriate procedural posture in this case, none of this expression is inherent in the game; it is not "merged" nor "scenes a faire." Rather, it is uncommon.

As part of its futile effort to avoid the clear similarities that give rise to a plausible claim of copyright infringement, AMP misrepresents the allegations in the Complaint, improperly putting words in Brainteaser's mouth that will allow AMP to point to "admissions" that particular forms of expression are free for anyone to copy. AMP likewise misrepresents the law, suggesting that copyright claims fall within a special category of claims that are amenable to easy dismissal on the pleadings. Yet in doing so, it fails to refute the rule that works of this sort are not amenable to a motion to dismiss, particularly where similarities in expression have been alleged. AMP's reference to cases involving textual works such as screenplays, where elements such as plot, tone, theme and mood can be easily identified, has no bearing on a case involving expressive designs with several expressive commonalities.

Worse still, AMP leaves out the well-established rule in this Circuit that the Court does not – not at *any* stage, and certainly not at the pleading stage – dissect the works into some set of separate components, and compare only those elements which are in themselves copyrightable. The reason for the omission is understandable, given that AMP urges the Court to do exactly what Second Circuit law says the court does not do, namely, slice and dice the expression in the works – along unprecedented lines that come only from the creative mind of the defendant itself – and, once the works have been broken down to what AMP claims are public domain elements, compare those elements and the microscopic differences between the works. The Court should not accept AMP's invitation to get bogged down in the weeds.[2]

AMP also dances around principles of unfair competition law, arguing that no reasonable juror could plausibly believe that a consistent trade dress used across dozens of titles of books

---

[2] Indeed, the result would be preposterous: a similar analysis on two identical novels would lead to the conclusion that they are not substantially similar because both contain only public domain words.

could not have adopted secondary meaning, and could not have led to confusion among consumers in the market that AMP's books are associated with Brainteaser. But it is well-established that the question of secondary meaning is a question posed during discovery, not on the pleadings. AMP throws a variety of approaches at the wall – ranging from modifying the boundaries of statutory and case law to injecting principles of the defense of fair use into the analysis – but none of them stick. When reviewing the Complaint in a light most favorable to Brainteaser, no question remains that Brainteaser has proffered allegations to identify a specific, recognizable trade dress, that AMP's adoption of a confusingly similar trade dress in its books is likely to confuse consumers as to the connection between Brainteaser and AMP, and that AMP must be prevented from free-riding on the goodwill Brainteaser has built in its works through its extensive sales in this country and throughout the world.

AMP may feel strongly about its case and may believe it should prevail at trial, but that does not give it a basis to make a Rule 12 motion that has no merit against any (much less all) of Brainteaser's claims. Established legal precedent counsels that under the facts alleged here, Brainteaser must be allowed to make its case on its claims – claims in which it likewise believes will prevail at trial. Indeed, it would be implausible to suggest, as AMP has done, that under no circumstances could a reasonable, ordinary observer come to the conclusion that AMP infringed on Brainteaser's rights. The motion should be denied accordingly.

## STATEMENT OF FACTS

For its recitation of the facts, AMP eschews the obligation to construe all allegations in a light most favorable to Brainteaser.[3] It is telling that much of what is purported to be "facts" is

---

[3] *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) ("[w]hen reviewing a motion to dismiss, a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.") (citations and internal quotations omitted).

reliant on documents and testimony beyond the four corners of the Complaint and the works in dispute.[4] AMP almost entirely ignores the allegations contained in the Complaint, fails to cite them in full, or otherwise selectively quotes a few words from them in order to mischaracterize them and set up the facts in a way to favor AMP. The consequence of AMP's tortured recitation of facts is that it has Brainteaser alleging facts that it would never allege, because those "facts" are not true. To briefly illustrate, AMP has Brainteaser alleging that its books contain "the standard 'depiction of a stick figure'" when the depiction of a stick figure is not standard in the hangman game itself. AMP's own cited evidence proves that its unfounded claim (at 4) that "all versions of the hangman game . . . . include 'a hanging-man drawing (including the body outline, noose and gallows)'" is utterly false. *See* Declaration of Eleanor M. Lackman, dated February 28, 2013 ("Lackman Decl."), at Ex. 1 (recognizing the game show "Wheel of Fortune" as a form of hangman). In a similarly misleading fashion, the so-called "Statement of Facts" characterizes Brainteaser as alleging that the silver scratch-off circles below each letter are included "*[b]ecause* Ward's books present hangman as a scratch-off game," AMP Br. at 3 (emphasis added), when Brainteaser's pleaded position is that scratch-off functionality does not require the

---

[4] On a motion to dismiss, a court may generally consider the complaint, attached exhibits, and documents incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its term and effect,' which renders the document "*integral*" to the complaint " *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)) (emphasis added). The policy behind the restriction to "integral" documents is useful here, where AMP has jumped to the wrong conclusions in order to make accusations that it could not make once discovery was had. As explained *infra* n.12, AMP's surmise and conjecture about the patent application that it submitted on its motion is specious and unfounded. Moreover, as discovery will reveal, not all of Brainteaser's books contain the same cut-out shape; therefore, AMP's effort to use different photographs to dictate Brainteaser's trade dress, and its claim that the depiction of Brainteaser's trade dress is "inaccurate" (AMP Br. at 4 n.1), are untrue and unfair.

letters to be hidden under silver circles – any more than that shape and color are required for scratch-off lottery tickets or any other scratch-off printed product.

The true facts, when construed in a light most favorable to Brainteaser – as is required on a motion to dismiss – are relatively straightforward and can be properly and accurately summarized as follows:

Brainteaser is the author and copyright owner of a successful interactive series of "Scratch & Solve Hangman" books, which are published by Sterling Publishing Co., Inc. ("Sterling") (the "S&S Hangman Books," each, an "S&S Hangman Book"). (Compl. ¶¶ 1, 10.) Over the course of the past twenty years, Brainteaser has released dozens of S&S Hangman Books, each of which features Brainteaser's unique design and stylistic twist on the classic game of hangman. (Compl. ¶¶ 11, 14, 16.) Due in no small part to its unique design, the S&S Hangman Books have enjoyed widespread marketplace success – having sold over 250,00 units in Australia and New Zealand in its first few years alone, and over 1.7 million units in the United States since Sterling began publishing the series in 2005. (Compl. ¶¶ 12-13, 15.)

Specifically, each game within the S&S Hangman Books contains the same recognizable and distinctive trade dress and unique design. (Compl. ¶ 14; *see also* Lackman Decl., at Ex. 2.) For instance, each game features a series of rows of silver scratch-off circles, and above each circle is a letter of the alphabet. (Compl. ¶ 14.) At the bottom of the page is a space for the player to fill in their answer, depicted with a row of numbered blank lines. (Compl. ¶ 14.) To the side of the scratch-off alphabet appears a stylized outline of a stick figure, depicted with dashed-lines, with a noose that hangs from a gallows and rests loosely around the stick-figure's neck. (Compl. ¶¶ 14, 19.) In addition, the S&S Hangman Books begin with an instruction page on "How to Play Hangman," and advising players that if they scratch-off the wrong letters, a

bold "**x**" will appear. *See* Lackman Decl., Ex. 3. The instruction page concludes by wishing players "Good Luck!". *Id.* Brainteaser has registered its copyright in each of the S&S Hangman Books and has duly complied with all relevant requirements of the Copyright Act with respect to its S&S Hangman Books (*see* Compl. ¶ 16).

Brainteaser recently discovered that since at least October 2008, AMP – a competitor of Brainteaser – began offering a competing series of scratch-off "Pocket Posh" hangman books (the "Infringing Books"). These books not only encompass the same scratch-off functionality that Brainteaser had been exploiting exclusively for several years, but they also incorporate the total concept, look, and feel of the S&S Hangman Books, including the trade dress associated with Brainteaser's S&S Hangman Books. (Compl. ¶¶ 18, 19.) Specifically, the Infringing Books take the overall layout and style of the text. (Compl. ¶ 19, Ex 1.) The Infringing Books lift the appearance of the rows of silver-scratch off circles, the placement of letters above each circle, and even the appearance of the typefaces. (Compl. ¶ 19, Ex. 1.) In both instances, the answer location appears at the bottom of the page, denoted with blank, numbered lines. (Compl. ¶ 19, Ex. 1.) Moreover, the Infringing Books appropriate the S&S Hangman Books' hanging-man drawing, consisting of dashed-line body outline, noose and gallows (*see* Compl., ¶¶ 14, 19, Ex. 1) which, contrary to AMP's assertion (at 4), is not an essential element of the hangman game.

Yet the similarities do not end there. AMP's instruction page, similarly entitled "how to play", also make prominent use of the bold "**x**", which, like the S&S Hangman Books, is used to denote an incorrect answer. *See* Lackman Decl., Ex. 3. AMP concludes its instruction page by also wishing its players "Good luck!". Furthermore, the Infringing Books copy a substantial number of answers from the S&S Hangman Books and in the first three Pocket Posh books

alone, over twenty percent of the answers are identical to those in previously published S&S

Hangman Books. (Compl. ¶ 20.) And soon after Brainteaser announced and published

*Hangwoman*, AMP followed up with *Girl Hangman*. (Compl. ¶ 21.) These facts confirm that

AMP set out to studiously copy Brainteaser's expression and free-ride on the goodwill that

Brainteaser had developed over the years. (*See* Compl. ¶¶ 11-12, 15.)

## ARGUMENT

## I.  BRAINTEASER'S COMPLAINT SUFFICIENTLY PLEADS A PLAUSIBLE CLAIM FOR COPYRIGHT INFRINGEMENT

In painstaking fashion, AMP's motion to dismiss recites off-point and misconstrued

principles of law that obfuscate the standard of review that applies. AMP Br. at 8-11. From

there, the remainder of the copyright argument nitpicks at perceived dissimilarities in elements it

claims are unprotectable. AMP Br. at 11-14. In the process, AMP ignores the common creative

elements that the works share. Moreover, and critically, AMP undertakes no effort to refute the

fact that an ordinary observer could plausibly find the works substantially similar as a matter of

law. Yet that fact, along with allegation of ownership of the works claimed, is all that is required

for Brainteaser's copyright claim to satisfy the pleading test.[5]

---

[5] AMP's suggestion (at 9) that the works at issue are insufficiently original for copyright protection is off-base. The works at issue are unquestionably original, and particularly so at the pleading stage given the presumption of validity that adheres to a copyright registration. *See* 17 U.S.C. § 410(c); *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 455 (2d Cir. 1989) (reviewing questions of validity on summary judgment); *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 484 (S.D.N.Y. 2008) ("the certificate of registration raises a rebuttable presumption that the work in question is copyrightable, as well as original" and may be overcome by evidence in the record). Brainteaser has alleged ownership of over two dozen registrations in the S&S Hangman Books (Compl. ¶ 16), making it inappropriate at this stage to divert the Court's attention with off-point recitations of law such as "in order to be protected by copyright, a work must be original." AMP Br. at 9. Presumably, AMP does not take the position that its own works are not "original."

The legal standards, when stated accurately, demonstrate that a motion to dismiss is improper. First, while AMP is correct that a court may resolve the question of substantial similarity as a matter of law, its citation to *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 59 (2d Cir. 2010) – apart from citing the wrong page – fails to note the caution with which courts dispose of copyright infringement claims at the pleading stage: courts do so only "in certain circumstances." *See id.* at 63. As the Second Circuit in *Gaito* explained:

> "[t]he test for infringement of a copyright is of necessity vague." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). Indeed, "[t]he determination of the extent of similarity that will constitute a *substantial*, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." 4-13 Nimmer on Copyright § 13.03 (2009). For that reason, and because the question of substantial similarity typically presents an extremely close question of fact, *Arnstein v. Porter*, 154 F.2d 464, 468-69 (2d Cir. 1946), questions of non-infringement have traditionally been reserved for the trier of fact.

*Id.* at 63 (emphasis in original; additional citations omitted). These concerns are heightened in cases involving primarily visual works such as the one at bar – as opposed to the more elaborate textual works cited in AMP's brief as examples of works dismissed at the pleading stage.[6] As Judge Hand explained in *Peter Pan Fabrics*, "[i]n the case of designs, which are addressed to the aesthetic sensibilities of an observer, the test is, if possible, even more intangible." 274 F.2d at 489.[7] And, for the reasons detailed more fully below, the extent to which AMP feels it necessary

---

[6] For example, both *Effie Film, LLC v. Pomerance* and *Mena v. Fox Entm't Grp., Inc.*, relied on by AMP (at 9), implicate elaborate textual screenplays, which lent themselves to higher-level comparisons of elements such as plot, themes and tone.

[7] A recent decision of this Court demonstrates both the fact-specific nature of *Gaito* and confirms that *Gaito* did not disturb the settled precedent of this Circuit: while in *Gaito*, the court found that the architectural designs in question there had an "utter lack of similarity" and it was "patent that the overall visual impressions of the two designs [were] entirely different," 602 F.3d at 66, 67, Judge Briccetti found that two architectural drawings stated a claim for copyright infringement based on finding similarities and denied a motion to dismiss accordingly. *Chirogianis, A.I.A. v. Parangi*, 11 CV 953 (VB), 2011 WL 6179706, at *3 (S.D.N.Y. Dec. 12, 2011).

to arbitrarily and unilaterally dissect Brainteaser's works beyond recognition should alone give the Court pause in dismissing Brainteaser's claim at the pleading stage. *Chirogianis*, 2011 WL 6179706, at \*1, 3 ("[t]he function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (citation omitted). Brainteaser has alleged actual copying by AMP (Compl. ¶¶ 18-20, 24) and a substantial similarity between their respective works (Compl. ¶ 24). This alone militates against dismissal. *See, e.g., Ellis v. Jean*, 10 Civ. 8837 (LMM), 2011 WL 6368555, at \* 4-6 (S.D.N.Y. Dec. 16, 2011) (denying defendant's motion to dismiss where plaintiff's complaint adequately states a cause of action for copyright infringement); *Great American Fun Corp. v. Hosung New York Trading Inc.*, 935 F. Supp. 488, 489 (S.D.N.Y. 1996) (Kaplan, J.) ("The question of substantial similarity should be reserved for the trier of fact – or at least the summary judgment stage – where, as here, the claim appears not only colorable, but well within outer limits.").

Second, in determining whether a plausible claim has been stated–indeed, even making that determination at the summary judgment or trial stage – the Court is not tasked to take an element-by-element, blinkered approach to pulling apart a work into some set of undefined characteristics (which characteristics may or may not be defined as "elements" in the first place). Rather, "[t]he standard test for substantial similarity between two [works] is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (citations and internal quotations omitted). The "ordinary observer test" asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.

1995).  On occasion, where the works at issue contain both protectable and unprotectable elements – putting aside the fact that the parties disagree here whether and to what extent they do – the inspection must be "more discerning," requiring the court to "attempt to extract the unprotectable elements" from consideration and ask whether the protectable elements, by themselves, are substantially similar.  *Id.*  This task flows from the principle that a court reviewing a copyright claim must take care to compare only the copyrightable *expression* of an idea, not the underlying idea itself.  *See id.*

AMP does not recite these fundamental and oft-cited principles of copyright law – AMP makes no mention or even an allusion to them.  According to AMP's novel interpretation of the standard, a court is tasked solely with extracting out the "unprotectable" elements before comparing the two works, looking at only the "protectable" elements that the works have in common.  AMP Br. at 8.  This is in fact how AMP's entire substantive analysis proceeds.  Yet, as this Court explained in denying another motion brought by AMP's counsel to dismiss a copyright infringement claim, "[n]o matter which test we apply, however, *we have disavowed any notion that we are required to dissect the works into their separate components, and compare only those elements which are in themselves copyrightable*."  *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 441 (S.D.N.Y. 2011) (citation and internal quotations omitted; emphasis added).  "Instead, the court is principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work."  *Id.* (citation and internal quotations omitted); *see also id.* at 447-48 & Ex. A (denying motion to dismiss copyright claim over photographs alleged to be recreated for a music video).[8]

---

[8] This holding is not obscure; moreover, AMP's citation of the decision in its brief (at 10) confirms that AMP had notice of it.  Indeed, the Second Circuit has recognized the absurdity of breaking down a work into its most minor components and comparing only those elements which

AMP's analysis of the works adheres to its overly narrow and mischaracterized version of the law rather than to this Circuit's test. It fails accordingly. *See id.*; *see also Coquico, Inc. v. Rodriquez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009) (a court should not "focus too intently on particular unprotected elements of a work at the expense of the work's overall protected expression."). Rather than address the total concept and overall feel, it devotes its argument to categorizing various facets of Brainteaser's works as "scenes a faire," "merged" or "functional," and then filtering them out until all that remains in common are the concept of a hangman game and the idea of including a scratch-off component to allow for play by one person as opposed to two. This is improper procedurally and substantively.

As a matter of procedure, a defendant cannot get a case thrown out on a Rule 12 motion based on its self-serving interpretations of what it (or its lawyer) believes may be stock elements, functional components or merged concepts. *See Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 329-330 (2d Cir. 2004) (vacating dismissal because of lingering factual questions concerning whether the design elements of the copyright at issue could be separated from the functional components); *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 608 (S.D.N.Y. 2010) ("Plaintiffs will, no doubt, have to confront this [merger] issue during discovery and at summary judgment, but the Court cannot say that as a matter of law it is implausible that the BanxQuote Indices are sufficiently subjective that a wide range of potential final values would be possible."); *see also Spry Fox LLC v. LOLApps*, C12-147RAJ, 2012 WL 5290158, at *

---

are in themselves copyrightable: "if we took this argument to its logical conclusion, we might have to decide that there can be no originality in a painting because all colors of paint have been used somewhere in the past." *Knitwaves*, 71 F.3d at 1003 (quotation and citation omitted). *Compare* AMP Br. at 12 (endeavoring to filter out the shape and color of the scratch-off coverings as unprotectable, and applying inapposite case law on protection of simple elements standing alone). Clearly, Brainteaser's works are copyrightable, *see* n.5, *supra*, and AMP cannot avoid its obligation to compare copyrightable components by suggesting that nothing in the books is copyrightable.

10 (W.D. Wash. Sept. 18, 2012) (denying motion to dismiss copyright infringement claim where game at issue consisted of both unprotectible, functional, and expressive components such that plaintiff's "allegations were more than adequate to illustrate the objectively similar expression embodied in [defendant's game].").  That AMP proffers the argument that no common elements are wholly original to Brainteaser makes dismissal particularly improper.  *See Ellis v. Jean*, 10 Civ. 8837 (LMM), 2011 WL 6368555, at *5 (S.D.N.Y. Dec. 16, 2011) ("[t]ypically, when the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve.") (internal quotation marks omitted).

Remarkably, AMP's own cited references and its own published works (*see* Lackman Decl., Exs. 5-6) reveal the red-herring nature of its invocation of doctrines such as merger and scenes a faire.[9]  As this evidence before this Court at the pleading stage already indicates, a variety of ways to depict a hangman game exists – which include varying the layout and depicting the hanging man in a certain way or, more commonly, not depicting him at all prior to game play.  *See id.*[10]  Brainteaser should not be barred from protecting its own creative depiction of the game any more than the creators of "Wheel of Fortune" should be barred from claiming their own separate copyright rights in their unique depiction of the classic hangman game.

Even assuming *arguendo* that the Court could properly engage in such a deep dissection of the works at this stage of the case, AMP's mischaracterizations of the copyrightable components of the works fail on the merits.  The commonalities do not reside solely in a hanging

---

[9] In AMP's "Flip & Click Hangman" series, for example, AMP sets its game against a decorative thematic background, employs rectangular shaped, movable letter/answer blocks and features a three-dimensional stick figure that enables users to color in, rather than trace the form of the figure as the game progresses.  *See* Lackman Decl., Ex. 4.

[10] This fact, as shown toward the end of the Wikipedia entry that identifies just a gallows, makes AMP's representation (at 12) that "a drawing of a hanging stick figure is an essential element of the classic hangman game" demonstrably wrong.  *See* Lackman Decl., Ex. 1 (identifying "Wheel of Fortune" as a form of hangman).

man, the choice to put letters in rows, and scratch-off functionality. Rather, the commonalities reside, *inter alia*, in the existence of a similarly depicted hanging man featuring not just the basic gallows, but a dashed-line outline with a noose hanging loosely around its neck;[11] not just scratch-off functionality, but silver circles covering similar-looking "**x**" marks;[12] and not just rows of letters, but the similarity in their appearance – particularly in the context of the overall layout. *See* Compl. ¶¶ 18-19. Even the language that appears at the beginning of the works is remarkably similar. *See* Lackman Decl., Ex. 3.[13]

---

[11] AMP cites *Salkeld* (at 12) for the proposition that stick figures are *per se* unprotectable, yet *Salkeld* makes clear that substantial similarity analyses are to be conducted on an "ad hoc" basis, and thus the Court undertook an independent comparison of the two works at issue. *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975). Putting aside the fact the *Salkeld* decision is from another circuit and did not apply this Circuit's standard, which counsels against determining substantial similarity by emphasizing the dissimilarities (*see infra* 15), in *Salkeld,* the court viewed all of the elements that comprised the works—charts depicting weight-lifting exercises—and found that the only commonality was the use of two very different stick figures. *Salkeld*, 511 F.2d at 909. In particular, some figures were adorned with types of clothes, while others were depicted with only trunks and showing their abdominal muscles. *Id.* In addition, the plaintiff's stick figure contained facial features, while the defendant's heads were faceless. Nonetheless, applying the *Salkeld* analysis to the facts at hand would lead to a finding of substantial similarity, where both AMP's and Brainteaser's stick figures are without distinction—both are defined by dashed-lines, are missing facial features and clothing, and share relatively similar poses. And notably and critically, the similarities between the works extend well beyond stick figures. *See* Compl. ¶¶ 19-20.

[12] As the Complaint does not assert a patent claim but rather copyright and trade dress claims, the reference to the provisional patent was obviously for color – including to illustrate that Brainteaser's exclusive use in the marketplace dates back to over a dozen years prior AMP's first use – and is not integral to the complaint. AMP's introduction of the records to fabricate a claim that the Complaint "falsely declares" that a provisional patent was issued is thus a distraction rather than a basis for argument, and it cuts well beyond the limitation of the scope of evidence that may be introduced on a motion to dismiss. *See* cases cited in n.4, *supra*. Nonetheless, as AMP would have learned in discovery had it not leapt to conclusions prematurely, the lapsing of the patent is not a rejection; it is an indication that the applicant chose not to continue to move to the next level of prosecuting the patent in full after the initial one-year provisional term expired.

[13] AMP's instruction page (dubbed "How to Play") lifts the total look and feel of Brainteaser's instruction section (similarly entitled "How to Play Hangman"), and incorporates the very same bold "**x**", concluding with "Good luck!" *See id.*

Commonalities further reside in an overall layout and appearance that give the two works the same look and feel from the view of an ordinary lay observer. *See Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 410 (D.N.J. 2012) (look and feel of video games, though depicted with different components, held substantially similar). As cases that even AMP cites state, "[a] work may be copyrightable even though it is entirely a compilation of unprotectible elements" and what is protectible is "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Knitwaves, Inc.*, 71 F. 3d at 1004 (quoting *Feist Publ'ns*, *Inc. v, Rural Telephone Service Co., Inc.*, 499 U.S 340, 358 (1991)). Yet AMP's analysis (at 11-13) appears to make no acknowledgement of this possibility. Rather, it loses the forest for the trees.[14]

The Court should likewise not be distracted by AMP's efforts to highlight perceived, and irrelevant, differences in the works – particularly not elements that Brainteaser does not own (such as the cover design)[15] or minor and abstract differences such as a colored band for a border or a change in font from serif to sans-serif. AMP Br. at 13. The Second Circuit has repeatedly instructed that differences, including subtle differences of the type AMP has raised, do not excuse copying. In finding that two fall-themed sweaters that depicted a *different* squirrel and a *different* leaf were nonetheless infringing due to similarity in total concept and feel, the court in *Knitwaves* was "not convinced by [defendant's] lengthy recitation of differences." 71 F.3d at

---

[14] AMP takes strides (at 12-13) to dismiss the commonalities between the answers in AMP's books and the answers in Brainteaser's books, but as Brainteaser has previously advised, the reference to these answers is primarily to support allegations of copying and willfulness. Nevertheless, in conjunction with full discovery, a reasonable juror might be able to find that the taking is probative on the substantial similarity test as to certain or all of the works. *See Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (finding infringement on basis of selection of facts and terms alone); *Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984) (similar).

[15] AMP's own exhibits show that the copyright in the cover belongs to someone else. *See* Penchina Decl. Exs. G-H; *see also* Lackman Decl. Ex. 2 (identifying Ray Goudey as the cover art illustrator).

14

1004. Likewise, in finding copyright infringement in area rug designs, the court rejected the defendant's efforts to identify differences, noting that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132-37 (2d Cir. 2003).[16] Only if the differences outweigh the similarities *and* the similarities are unimportant and insubstantial do the differences matter. *LaChapelle*, 812 F. Supp. at 446, n.80. As described above, that is not the case here.

In sum, AMP has failed to demonstrate – much less establish – that under this Circuit's prevailing law, Brainteaser cannot state a plausible claim that the works at issue are not substantially similar. As Brainteaser has alleged (Compl. ¶¶ 18-22) and a comparison of the works at issue shows, a reasonable juror could certainly find that AMP unlawfully misappropriated the protectable creativity in Brainteaser's series of books and award judgment to Brainteaser. AMP's motion to dismiss the copyright claims should be denied accordingly.

---

[16] AMP's additional theories regarding standing and the statute of limitations are unavailing. First, AMP calls into question Brainteaser's entire copyright claim on grounds that it lacks standing to assert a claim with respect to the *Hangwoman* book, because the copyright registration lists "Diane Ward" as the author and true owner of this particular book. But as AMP would have learned in discovery, the name "Diane Ward" was used as a pseudonym to sell its female targeted version *Hangwoman*. Due to an error in the registration, the book's pseudonymous status was not accurately reflected; however any error has since been corrected with an amended registration, and the oversight has no bearing on Brainteaser's several other S&S Hangman Books. *See* Lackman Decl., Ex. 6. Brainteaser is thus the actual owner of all S&S Hangman Books, including the *Hangwoman* book, and thus has standing to bring this action under 17 U.S.C. § 501(b) as explained in its complaint. (Compl. ¶¶ 10, 16). With respect to AMP's statute of limitations argument, this too must also fail. Under the "discovery rule," infringement claims accrue from the date of discovery. *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992); *Psihoyos v. John Wiley & Sons, Inc.*, 11 Civ. 1416 (JSR), 2011 WL 4916299, at * 5 (S.D.N.Y. Oct. 14, 2011). And even if the Court applies the "injury rule" advocated by AMP, 17 U.S.C. § 507 does not bar new and ongoing infringements well within the 3 year statute of limitations. As Brainteaser indicates in its complaint, and as AMP knows from its own catalog of Pocket Posh books, AMP continues to publish and sell Infringing Books (Compl. ¶ 22), and most recently released a new title in May of 2012. *See* Lackman Decl., Ex. 5 (reflecting a publication date of May 29, 2012).

## II.  BRAINTEASER HAS PROPERLY STATED A COLORABLE CLAIM FOR TRADE DRESS INFRINGEMENT

For its request to dismiss Brainteaser's trade dress infringement claim, AMP improperly elevates Brainteaser's burden at the pleading stage, and complains that Brainteaser fails to articulate the elements of its trade dress.  While Rule 8 only requires Brainteaser to plead facts sufficient to provide AMP with notice of its claim, Brainteaser's Complaint exceeds this baseline requirement by specifically describing the elements of its distinctive trade dress.  *See* Compl. ¶¶ 14, 18.  *See also S B ICE, LLC v. MGN, LLC*, 08 Civ. 3164 (DLC), 2008 WL 4682152,  at * 1 (S.D.N.Y. Oct. 20, 2008) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)) ("Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is 'not meant to impose a great burden upon a plaintiff'"); *Pernod Ricard USA, LLC v. Luxco, Inc.*, 10 Civ. 1567 (PAC) (Dkt. # 27) (S.D.N.Y. Feb. 18, 2011) (denying motion to dismiss trade dress infringement claim where defendant argued that plaintiff failed to articulate the elements that comprised its trade dress) (Crotty, J.).  Thus, Brainteaser is entitled to discovery on the question of secondary meaning and extent of consumer confusion.

AMP complains (at 16-17) that Brainteaser's trade dress claim lacks specificity, apparently ignoring the pertinent allegations, which properly set forth a cause of action under Section 43(a) (*see* Compl. ¶¶ 27-31), in addition to the elements comprising its trade dress which are printed on virtually every page in each S&S Hangman Book: "all of the S&S Hangman Books contain the same unique style and trade dress, including a series of silver scratch-off circles below each letter of the alphabet, depicted in a few rows.  Below that element appear numbered blanks for the answers.  Next to the scratch-off alphabet section appears a dashed-line depiction of a stick figure with a noose placed loosely around its neck." (Compl. ¶ 14.) Brainteaser further elaborates on its hanging-man drawing, which consists of "the body outline,

noose and gallows." (Compl. ¶ 19.) To resolve any lingering confusion about its trade dress, Brainteaser attaches a representative photograph to the complaint. *See* Compl., Ex. 1.[17] This is the overall trade dress claimed, making AMP's narrow focus on just one part of it (*i.e.*, the silver circles) off-point and its reliance on pure functionality cases (*e.g.*, AMP Br. at 17) off-target. Notably, not only is the appearance of the circles nonfunctional, but AMP has never proffered the argument that the overall trade dress that consumers recognize – which is what controls here – is functional.[18]

AMP also baldly claims that the trade dress is not an indicator of source. AMP's self-serving view is unavailing and wrong. As Brainteaser makes clear, its trade dress serves an independent source identifying function, consistently appearing in its extensive series of dozens of books bearing the trade dress. (Compl. ¶ 14.) *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992) (trade dress may involve "the total image of a product and may include features such as size, shape, color or color combinations"); *Hofmann v. Kleinhandler*, 93 Civ.

_____

[17] Moreover, AMP cannot be heard to complain that Brainteaser's complaint is defective where AMP filed a nearly identical trade dress infringement claim for its *Pocket Posh* series in the Western District of Missouri, asserting virtually the same elements set forth by Brainteaser in its complaint. *See Andrews McMeel Publishing, LLC v. Publications Int'l, Ltd.*, 11 Civ. 00419 (Dkt. # 1) (W.D. Mo. Apr. 20, 2011) (describing measurements, construction, general printing style, and location of puzzle solutions and identifying its trade dress as including the exterior and the interior of its "Pocket Posh" books). Nor does AMP have any explanation for its insistence (at 4 n.1) that the shape of the pages is somehow "distinctive" when, according to AMP, nothing else in Brainteaser's trade dress can possibly be distinctive.

[18] AMP argues (at 17-18) that Brainteaser failed to proffer any factual allegations to indicate that its trade dress is non-functional, yet when pressed at the January 14, 2013 Pre-Motion Conference as to whether an amendment to the complaint could cure any purported defect, opposing counsel answered in the negative. Despite AMP's prior representation in court, AMP now seeks to profit from a technicality. Nonetheless, Brainteaser has shown here and will show at trial that its trade dress (including the components thereof, such as silver foil circles) is non-functional and has secondary meaning. *See, e.g., Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*, 696 F.3d 206, 226-227 (2d Cir. 2012) (contrasting red outsole of shoe held to have secondary meaning). Therefore, as the pleadings will conform to the proof at trial, Brainteaser suggests that the process of a formal amendment is amenable to being waived. Fed. R. Civ. P. 15(b); *Sec. & Exch. Comm'n v. Rapp*, 304 F.2d 786, 790 (2d Cir. 1962).

5638, 1994 WL 240335 at * 5 (S.D.N.Y. May 31, 1994) ("[t]he total image of the Hofmann Brochure, which is comprised of the layout, the text, photographs and color combinations, forms a distinctive trade dress . . . .").[19]

AMP's argument (at 16) that Brainteaser must prove that the appearance of its product serves as a designator of source is premature. None of the cases cited by AMP support the proposition that this must be proved *at the pleading stage*. Both *Speirs* and *Ann Howard Designs L.P.* were decided on summary judgment, while *Yurman Design, Inc.* was decided after a jury trial on review of a judgment to set aside the verdict, and for good reason. For Brainteaser to demonstrate that its product has acquired secondary meaning and thus functions as a source identifier, it must undergo discovery to prove that consumers have come to recognize it as such. *Coach, Inc. v. We Care Trading, Co., Inc.*, 67 Fed. Appx. 626, 629 (2d Cir. 2002) (observing that secondary meaning is demonstrated through "advertising expenditures use to link a product with its mark; consumer studies or direct testimony from consumers linking the mark to the source; sales success; unsolicited media coverage; attempts to plagiarize; and length and exclusivity of use of the mark."); *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 640 (S.D.N.Y. 2001) ("proof of secondary meaning entails vigorous evidentiary requirements" and finding that questions of fact remain such that any determination would be premature on a motion to dismiss); *7777388 Ontario Ltd. v. Lencore Acoustics Corp.*, 105 F. Supp. 2d 56, 64 (E.D.N.Y. 2000) (denying motion to dismiss trade dress claim and observing "it may well be that issues of

---

[19] AMP makes much of the covers, but this is irrelevant, as further explained herein. Consumers familiar with Brainteaser's trade dress encounter it – and AMP's trade dress – directly at the point of sale. This includes online sales, where companies like Amazon.com encourage its purchasers to use its "Look Inside!" feature to preview the key elements that comprise Brainteaser's trade dress and AMP's use of it. *See, e.g.,* Lackman Decl., Exs. 1-2.

fact will emerge later in this litigation concerning whether [plaintiff's] trade dress really is distinctive.").[20]

As with its substantial similarity analysis, AMP grossly misstates (at 18) the standard for trademark infringement, incorrectly claiming that "the Lanham Act is concerned only where a defendant has *employed a plaintiff's mark* as a designation of the source of defendant's own goods or services." (emphasis added). This is wrong, and none of the cases cited by AMP stand for this proposition. As the Lanham Act makes abundantly clear, it is designed to provide redress against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person . . .

15 U.S.C. § 1125(a)(1). The standard is not identical similarity, as advocated for by AMP, and Brainteaser need not allege that AMP employed Brainteaser's mark in its entirety, but rather that AMP's use is likely to cause confusion, and Brainteaser pleads as much (Compl. ¶ 30). *See, e.g. Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415, 430 (S.D.N.Y. 2003), *aff'd in part, vacated in part, and remanded*, 454 F.3d 108 ("[l]ikelihood of confusion is the keystone of trademark infringement."). The support for AMP's argument, references to case law involving classic fair use and nominative fair use (*see* AMP Br. at 18-19), is confusing, inapt and reveals a lack of understanding of trademark law. What the argument seems to say is that AMP

---

[20] Likewise, discovery is necessary to determine the extent of consumer confusion. *Eliya, Inc. v. Kohl's Dept. Stores*, 06 Civ. 195 (GEL), 2006 WL 2645196, *3, n.2 (S.D.N.Y. Sept. 13, 2006) (noting that the application of the *Polaroid* factors on a "motion to dismiss would be inappropriate because it would involve premature factfinding.").

*did* use Brainteaser's trade dress, but used it in a different way than Brainteaser used it.  Whether or not AMP intended to make such an admission, there is no question that – as the exhibits show – both Brainteaser and AMP used the design in the same way:  as a consistent identifier of the series of books.  In any event, fair use is an affirmative defense that is ordinarily not susceptible to resolution on a motion to dismiss.  *See, e.g., Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006).[21]

Finally, AMP attempts to preclude Brainteaser's trade dress infringement claim based on the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23 (2003).  AMP again misconstrues the law, this time stretching the holding of *Dastar* well beyond its narrow boundaries.  *Dastar* is not a blanket bar to trade dress claims simply because a copyright claim is alleged.  Rather, the holding applies to bar claims of false attribution or reverse passing-off.  *Pearson Education, Inc. v. Boundless Learning, Inc.*, --F.Supp.2d--, 2013 WL 357631, at *4 (S.D.N.Y.  Jan. 30, 2013) (denying motion to dismiss trademark infringement claim and observing that *Dastar* only addressed the applicability of the Lanham Act to reverse passing off); *see also* 5 McCarthy on Trademarks and Unfair Competition § 27:78 (4th ed.) (observing that *Dastar* is limited to false claims of authorship, attribution, or reverse passing off).  To the contrary, courts have rejected similar arguments to the one AMP makes, permitting copyright and trademark claims to coexist where consumer confusion is alleged through the use of a plaintiff's trademark.  *See, e.g., Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 416 (D.N.J. 2012) (permitting plaintiff's claims for both copyright and trade dress

---

[21] AMP's suggestion that a disclaimer on the front of its Infringing Books dispels any confusion ignores the law of this Circuit, which places a "heavy burden" on the defendant to demonstrate the efficacy of its disclaimer in preventing likely confusion.  *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1316 (2d Cir. 1987); *see also* 4 McCarthy on Trademarks and Unfair Competition § 23:51 (4th ed.) (noting that according to consumer studies, disclaimers do little to obviate confusion, and in some instances can aggravate it).

infringement to stand and granting summary judgment in favor of plaintiff on both counts); *Profoot, Inc. v. MSD Consumer Care, Inc.*, Civ. No. 11-7079 (AET), 2012 WL 1231984, at *3 (D.N.J. Apr. 12, 2012) (noting that *Dastar* "does not stand for the proposition that all trade dress infringement cases are preempted when copyright provides an adequate remedy."); *see also Slep-Tone Ent'mt Corp. v. Arrowood*, 10-cv-592, 2011 WL 4482082, at *3 (S.D. Ohio Sept. 26, 2011); 6 Patry on Copyright § 18:50 ("*Dastar* does not, however, reach traditional trademark infringement actions, where the allegation does not concern copying of content, but rather *consumer confusion* through use of plaintiff's trademark.") (emphasis added). To the contrary, Brainteaser's trade dress claim is predicated on the notion that its design serves an independent source identifier, and through its marketing efforts and consistent use, the design has acquired secondary meaning. AMP's use of a confusingly similar mark thus is actionable.

## III. BRAINTEASER'S UNFAIR COMPETITION IS PROPERLY PLEADED AND NOT PREEMPTED BY THE COPYRIGHT ACT

Brainteaser's state law claim for unfair competition cannot be preempted by the Copyright Act where, as here, it is qualitatively different from its copyright claim, as it involves the additional element of AMP's intentionally causing of consumer confusion by deceiving consumers into thinking that there is some sponsorship, affiliation or connection between AMP's Infringing Books and Brainteaser's franchise of hangman books. *See Colour & Design v. U.S. Mfg. Corp.*, 04CIV8332 (MBM), 2005 WL 1337864, at *6 (S.D.N.Y. June 3, 2005) ("'confusion as to source' constitutes an 'extra element'") (quoting *Samara Bros., Inc. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 131-32 (2d Cir. 1998)). Because Brainteaser's claims do not arise "solely" or "only" under the rights under copyright laws, AMP's efforts to dismiss the claim are without

merit.[22]

For this reason, none of AMP's cited cases are on point. For example, in *Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*, AMP's lead case, the court properly dismissed the plaintiff's unfair competition claim where it was "grounded solely in copying" and its allegations of bad faith were insufficient to rise to the level of something "qualitatively different" than copyright infringement. 497 F. Supp. 2d 541, 556 (S.D.N.Y. 2007). By contrast, Brainteaser has pled that it and AMP are competitors – indeed, they are competitors in an extremely small market. Recognizing Brainteaser's success with its hangman books, AMP sought to capitalize on Brainteaser's goodwill by piggy-backing on its recognizable trade dress and proven design, all in an effort to usurp Brainteaser's market share. (Compl. ¶¶ 17, 19.) These allegations are certainly "something different" from a simple claim of copying – they plead unfair competition in every sense of the term and thus the claim cannot be shot down merely because a copyright claim is included in the same pleading. *See Raffoler, Ltd. v. Peabody & Wright, Ltd.*, 671 F. Supp. 947, 950 (E.D.N.Y. 1987) (denying motion to dismiss unfair competition claim and rejecting defendant's preemption argument where plaintiff's claim is based on the tort of passing off and is not "asserting rights equivalent to those protected by copyright") (quoting *Warner Bros. v. America Broadcasting Companies*, 720 F.2d 231, 247 (2d Cir. 1983)).

---

[22] Because Brainteaser's claims do not fail under the Lanham Act, AMP's alternative basis to dismiss the unfair competition claim (*see* AMP Br. at 21) has no merit.

## CONCLUSION

For the foregoing reasons, AMP's motion should be denied in its entirety.

Respectfully submitted,

Dated: February 28, 2013
       New York, New York

COWAN, DeBAETS, ABRAHAMS &
SHEPPARD LLP

By: _____

Eleanor M. Lackman
Joshua S. Wolkoff
41 Madison Avenue, 34th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
JWolkoff@cdas.com

*Attorneys for Plaintiff*