UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL WARD d/b/a BRAINTEASER  :
PUBLICATIONS,                    :  Civil Case No.
                   Plaintiff,  :  12-CV-7987 (PAC)
     vs.                         :
                                   :
ANDREWS McMEEL PUBLISHING, LLC,  :
                                   :
                   Defendant.   :
------------------------------------------------------------X

# ANDREWS McMEEL PUBLISHING, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Robert Penchina
rpenchina@lskslaw.com
LEVINE SULLIVAN KOCH &
  SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
Tel:   (212) 858-6109
Fax:  (212) 858-6299

*Attorneys for Defendant Andrews McMeel
    Publishing, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii
I.     WARD'S COPYRIGHT CLAIM IS MERITLESS .......................................................... 1
II.    WARD'S TRADE DRESS CLAIMS ARE MERITLESS ................................................ 7
CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affiliated Hospital Products, Inc. v. Merdel Game Manufacturing Co.*,
   513 F.2d 1183 (2d Cir. 1975) ............................................................................... 7

*Alexander v. Murdoch*,
   10 Civ. 5613(PAC)(JCF), 2011 WL 2802923 (S.D.N.Y. July 14, 2011) ............... 2-3

*Allen v. Scholastic, Inc.*
   739 F. Supp. 2d 642 (S.D.N.Y. 2011) ................................................................... 3

*Bell v. Blaze Magazine*,
   2001 WL 262718 (S.D.N.Y. 2001) ........................................................................ 3

*Boisson v. Banian, Ltd.*,
   273 F.3d 262 (2d Cir. 2001) ................................................................................. 7

*Buckman v. Citicorp*,
   1996 WL 34158 (S.D.N.Y. 1996), *aff'd*, 101 F.3d 1393 (2d Cir. 1996) ................ 3

*Davis v. American Broadcasting Companies, Inc.*,
   2010 WL 2998476 (W.D. Mich. 2010) ................................................................. 3

*DiTocco v. Riordan*,
   2012 WL 4016898 (2d Cir. 2012) ......................................................................... 3

*Ellis v. Jean*,
   2011 WL 6368555 (S.D.N.Y. 2011) ...................................................................... 5

*Heller Inc. v. Design Within Reach, Inc.*,
   2009 WL 2486054 (S.D.N.Y 2009) ...................................................................... 8

*Heptagon Creations, Ltd. v. Core Group Marketing LLC*,
   2011 WL 6600267 (S.D.N.Y. 2011), *aff'd*, 2013 WL 135409 (2d Cir. 2013) ...... 8, 10

*High Point Design LLC v. Buyer's Direct, Inc.*,
   2012 WL 1820565 (S.D.N.Y. 2012) ...................................................................... 8

*Hobbs v. John*,
   2012 WL 5342321 (N.D. Ill. 2012) ........................................................................ 3

*ID7D Co. v. Sears Holding Corp.*,
   2012 WL 1247329 (D. Conn. 2012) .................................................................... 8-9

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
 808 F. Supp. 2d 542 (S.D.N.Y. 2011), *aff'd*, 2012 WL 4856412 (2d Cir. 2012) ..................5-6

*Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.*,
 945 F.2d 509 (2d Cir. 1991) ........................................................................................3

*Knitwaves, Inc. v. Lollytogs Ltd.*,
 71 F.3d 996 (2d Cir. 1995) ..........................................................................................3

*Louis Vuitton Mallatier S.A. v. Warner Bros. Entertainment Inc.*,
 868 F. Supp. 2d 172 (S.D.N.Y. 2012)..........................................................................10

*Mena v. Fox Entertainment Group, Inc.*,
 2012 WL 4741389 (S.D.N.Y. 2012)..............................................................................3

*Naked Cowboy v. CBS*,
 844 F. Supp. 2d 510 (S.D.N.Y. 2012)........................................................................9-10

*National Lighting Co. v. Bridge Metal Industries, LLC*,
 601 F. Supp. 2d 556 (S.D.N.Y. 2009) ....................................................................... 7, 8

*Peter F. Gaito Architecture, LLC. v. Simone Development Corp.*,
 602 F.3d 57 (2d Cir. 2010)................................................................................... 2, 3, 4

*Pollick v. Kimberly-Clark Corp.*,
 817 F. Supp. 2d 1005 (E.D. Mich. 2011) ....................................................................... 4

*Randolph v. Dimension Films*,
 634 F. Supp. 2d 779 (S.D. Tex. 2009), *aff'd*, 381 F. App'x 449 (5th Cir. 2010)...................... 3

*Rogers v. Koons*,
 960 F.2d 301 (2d Cir. 1992) ........................................................................................5

*Stiles v. HarperCollins Publishers LLC*,
 801 F. Supp. 2d 233 (S.D.N.Y. 2011) ............................................................................ 4

*Telebrands Corp. v. Del Laboratories, Inc.*,
 719 F. Supp. 2d 283 (S.D.N.Y. 2010) ........................................................................ 4, 9

*Theotokatos v. Sara Lee Personal Products*,
 971 F. Supp. 332 (N.D. Ill. 1997) ................................................................................. 4

*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
 2012 WL 3240442 (S.D.N.Y. 2012) ..................................................................... 7, 8, 9

*Williams v. Citibank, N.A.*,
 565 F. Supp. 2d 523 (S.D.N.Y. 2008) ............................................................................ 1

Defendant Andrews McMeel Publishing, LLC ("AMP") respectfully submits this reply memorandum in further support of its motion to dismiss the Complaint.

I. **WARD'S COPYRIGHT CLAIM IS MERITLESS**

It is fundamental that, in assessing the adequacy of a complaint on a motion to dismiss, a court "'need not accept as true an allegation that is contradicted by documents on which the complaint relies'" and it should "disregard a plaintiff's 'legal conclusions, deductions or opinions couched as factual allegations.'" *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008). Ward nevertheless asks this court to disregard the books actually published by each of the parties and just move on because he "alleged . . . a substantial similarity between their respective works." Opp. 9. But, as detailed in AMP's opening memorandum, the similarities between the parties' works that Ward identified in his complaint all relate to elements that are not original to Ward, are functional or scenes à faire for a scratch-off hangman game, or which otherwise are not protectable. The same is true for the two additional purported similarities Ward trots out in his memorandum: both parties use an "X"—the universally accepted symbol for a wrong answer—to denote a wrong guess, and their instructions for how to play the game each conclude "by wishing players 'Good Luck!'" Opp. 5-6, 13 n.13.

Ward vociferously argues that the Court should disregard the uncopyrightable nature of the elements he seeks to prevent AMP from using and to focus instead on the "overall layout and appearance" of his "primarily visual works." Opp. 8, 14. But, Ward has no answer for the fact, so he simply ignores, that the visual aspects of his books are "not even covered by Ward's copyright registrations, which on their face list text—but do not specify any look or design—as the work of authorship protected by Ward's registrations." AMP Mem. 11; *see, e.g.*, Lackman Dec. Ex. 6. Ward

1

essentially concedes that he has not stated a claim based on the text of his answers, which his complaint mentions "primarily to support allegations of copying." Opp. 14 n.14.

The primary thrust of Ward's opposition is his view that "a motion to dismiss is improper," and that when applying the "ordinary observer" test a court should not be "extracting out the 'unprotectable' elements before comparing the two works." *Id.* at 8, 10. Ward is just wrong. The Second Circuit has expressly instructed that "[w]here, as here, plaintiffs point to a variety of alleged similarities between two works, we are required to determine whether any alleged 'similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking.'" *Peter F. Gaito Architecture, LLC. v. Simone Dev. Corp.*, 602 F.3d 57, 67 (2d Cir. 2010) (citation omitted). Thus, the Second Circuit held that "because plaintiffs have failed to allege that 'a substantial similarity exists between [defendants'] work and the protectible elements of [plaintiffs'],' the district court properly dismissed plaintiffs' federal copyright claim." *Id*. at 69 (brackets in original, citation omitted). Likewise, this Court has stated,

> where, as here, the works in question are attached to the Plaintiff's complaint or were necessarily used in drafting the complaint, "it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."

*Alexander v. Murdoch*, 10 Civ. 5613(PAC)(JCF), 2011 WL 2802923, at *3 (S.D.N.Y. July 14, 2011) (citation omitted). And, "[w]here a copyrighted work contains both protectable and unprotectable elements, however, 'the usual "ordinary observer" test becomes "more discerning," and requires the Court to "attempt to *extract the unprotectable elements* from ... consideration and ask whether the

2

*protectable elements, standing alone*, are substantially similar.'"" *Id*. (emphasis added) (quoting *Allen v. Scholastic, Inc.*, 739 F. Supp. 2d 642, 654 (S.D.N.Y. 2011)).[1]

Utilizing a block quote from *Peter F. Gaito*, 602 F.3d at 63, Ward argues that "questions of non-infringement have traditionally been reserved for the trier of fact." Opp. 8. But, Ward omits that case's conclusion: "The question of substantial similarity is by no means exclusively reserved for resolution by a jury." *Peter F. Gaito*, 602 F.3d at 63. While emphasizing that courts may dispose of copyright infringement claims at the pleading stage "only 'in certain circumstances,'" Opp. 8, Ward fails to recognize that this case presents precisely the circumstance for which the Second Circuit instructed that a copyright claim should be dismissed: "'the similarity between two works concerns only non-copyrightable elements of the plaintiff's work.'" *Peter F. Gaito*, 602 F.3d at 63 (citation omitted). Likewise, Ward's suggestion that "elaborate textual works" rather than "primarily visual works such as the one at bar" present the only circumstance in which dismissal is appropriate is flat-out wrong. Opp. 8; *see id.* at 2 ("works of this sort [*i.e.*, "not involving textual works"] are not

---

[1] This Court did not go out on a limb when pronouncing that unprotectable elements should be extracted when comparing works on a motion to dismiss. Dozens of cases (if not more) have done just that. *See, e.g.*, *DiTocco v. Riordan*, 2012 WL 4016898, at *1 (2d Cir. 2012) (on motion to dismiss "'we must attempt to extract the unprotectible elements from our consideration and ask whether *the protectible elements, standing alone, are substantially similar.*'") (emphasis in original) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)); *Mena v. Fox Entm't Grp., Inc.*, 2012 WL 4741389, at *4 (S.D.N.Y. 2012) (addressing a motion to dismiss, "[w]here a work is not 'wholly original' because it incorporates elements from the public domain, '[w]hat must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation.'" (quoting *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 514 (2d Cir. 1991)); *Hobbs v. John*, 2012 WL 5342321, at *7 (N.D. Ill. 2012) (granting motion to dismiss because "after filtering out the non-protected elements, no similarities exist between the two songs except for generic themes, words, and phrases"); *Davis v. Am. Broad. Cos., Inc.*, 2010 WL 2998476, at *6 (W.D. Mich. 2010) (granting motion to dismiss because "alleged similarities must be filtered out from the consideration of substantial similarity because they are stock themes and characters, or scenes a faire, and therefore unprotectible."); *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 789 (S.D. Tex. 2009) (granted motion to dismiss because court "noted points of similarity between the two works but found that they were either insignificant or involved unprotectable elements."), *aff'd*, 381 F. App'x 449 (5th Cir. 2010); *Bell v. Blaze Magazine*, 2001 WL 262718, at *3 (S.D.N.Y. 2001) (where court "concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement."); *Buckman v. Citicorp*, 1996 WL 34158, at *3 (S.D.N.Y. 1996) (granting motion to dismiss because comparison of works reflects that "any similarities between them relate only to non-copyrightable elements."), *aff'd*, 101 F.3d 1393 (2d Cir. 1996).

3

amenable to a motion to dismiss"). In the first place, Ward again ignores that the only aspect of his books covered by his copyright registrations is the "text"—and not any visual design. *See, e.g.,* Lackman Dec. Ex. 6. Secondly, *Peter F. Gaito* itself did not deal with a textual work, but affirmed dismissal of a claim aimed at architectural works after the district court concluded that "[t]he overall visual impressions of the two designs are entirely different." 602 F.3d at 61. Moreover, courts routinely grant motions to dismiss copyright infringement claims relating to visual works when the similarities between them relate to non-protectable elements. *See, e.g., Stiles v. HarperCollins Publishers LLC*, 801 F. Supp. 2d 233, 240 (S.D.N.Y. 2011) (granting motion to dismiss because, "[a]lthough there are obvious similarities between the tree house designs and illustrations, 'the similarities do not go beyond the concepts and ideas [and process] contained in plaintiffs' drawings.'") (citation omitted, brackets in original); *Pollick v. Kimberly-Clark Corp.*, 817 F. Supp. 2d 1005, 1011 (E.D. Mich. 2011) (dismissing claim for infringement of drawn designs for clothing after observing: "the court must filter out elements of the work that are not original to the author. 'Scènes à faire' (French: 'scenes for action'), 'the indispensable or standard aspects of a work, or those that follow directly from unprotectable ideas' should be filtered out as well.") (citations and quotation marks omitted); *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 295 (S.D.N.Y. 2010) (granting motion to dismiss infringement claim directed at visual elements of product packaging because "many of the features Telebrands identifies are not protectible because they are not original"); *Theotokatos v. Sara Lee Personal Prods.*, 971 F. Supp. 332, 341 (N.D. Ill. 1997) (dismissing claim for infringement of artistic designs because "comparing [plaintiff's] designs with the accused designs, it is clear that the similarities between the two sets of designs are limited to nonprotectible elements.").

Ward chastises AMP for purportedly overlooking that copyright may protect "a compilation of unprotectible elements." Opp. 14. But, the fact that compilations may, of course, be eligible for

4

copyright protection does not help Ward here. As mentioned above, Ward's copyright registrations claim protection only for text, and not for a compilation of visual or other elements. Indeed, the applications that ripened into Ward's copyright registrations omitted any claim to authorship of a compilation in line 6a of the form, the space provided for such a claim. *See* Penchina Dec. Ex. D.

Ward also chastises AMP for supposedly ignoring "the presumption of validity that adheres to a copyright registration." Opp. 7 n.5. AMP, however, does not contend that there is nothing copyrightable about Ward's works and it is not seeking to invalidate his registrations due to the copyrightability of his works' contents.[2] Rather, AMP contends that the particular aspects Ward alleges AMP had copied simply are not protectable. It is fundamental that just because "a whole work is copyrighted does not mean that every element of it is copyrighted; copyright protection extends only to those components of the work that are original to the creator." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992).

Ward's contention that copyrightability cannot be determined on a motion to dismiss is wrong. His reliance on *Ellis v. Jean*, 2011 WL 6368555 (S.D.N.Y. 2011), for the proposition that "when the originality of a copyrighted work is at issue, it becomes a question of fact for the jury" is misplaced. Opp. 12. In that case, there was a factual dispute between musical performers about whether plaintiff or another performer came up with the "the background vocal music" of a song's "hook." 2011 WL 6368555, at *6. In contrast, this case is not concerned with the derivation of an obscure composition but a ubiquitous classic game, and there is and can be no factual dispute that Ward did not originally conceive to use a hanging stick figure in the Hangman game, an "X" to mark wrong guesses, dashes to fill in the right answers, or the other features that flow naturally from the idea of a scratch-off version of the game. *See, e.g., Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,

---

[2] AMP does, however, reserve its right to challenge those registrations should a basis for doing so come to light.

808 F. Supp. 2d 542, 550-52 (S.D.N.Y. 2011) (granting motion to dismiss after finding that elements common to the parties' works were not copyrightable), *aff'd*, 2012 WL 4856412 (2d Cir. 2012).

Likewise, Ward's claims cannot be saved by Ward's curious repeated assertions that that the television game show "Wheel of Fortune" is "a form of hangman." Opp. 4, 12, & n.10. The fact that the word game aspect of that television show may be loosely based on the some part of the hangman game does not somehow make Ward's work—based entirely on the classic hangman game—original, or lacking in scenes à faire. Nor does it make the utilitarian aspects of what Ward is seeking to protect by copyright any less functional.[3]

Ward's strained attempt to show actionable similarity between specific elements of the parties' works also fail. For instance, he contends that AMP uses "a similarly depicted hanging man featuring not just the basic gallows, but a dashed-line outline with a noose hanging loosely around its neck." Opp. 13. However, as is shown below, AMP's simple hanging stick figure is more alike to the classic hangman stick figure shown in the Wikipedia report submitted by Ward, than it is to Ward's depiction.

| | | | |
|---|---|---|---|
| Wikipedia, page 4 of 5, Lackman Dec. Ex. 1 | AMP | Ward | Ward, Supp. Penchina Dec. Ex. 2 |

---

[3] Ward repeatedly states that the Wikipedia entry evidences "'Wheel of Fortune' as a form of hangman." Opp. 4, 12 n.10. It does no such thing. The Wikipedia article merely indicates that "Wheel of Fortune is based on Hangman." Similarly, Ward is not helped by his submission of another version of hangman published by AMP—"Flip & Click" Hangman. Lackman Dec. ¶ 5 & Ex. 4. This submission not only is improper because this version is not referenced in or in any way integral to the complaint, but like Wheel of Fortune has no relevance to the unprotectable nature of what AMP allegedly copied. AMP's "Flip & Click" hangman games, as Ward concedes, are *not* scratch-off games. Thus, there is no need for the functional scratch-off circles present in the books actually at issue in this case.

Moreover, none of these depictions are sufficiently original to be protected by copyright. *See, e.g., Boisson v. Banian, Ltd.*, 273 F.3d 262, 269 (2d Cir. 2001) (there is "no copyright protection for 'familiar symbols or designs'").[4]

Likewise, Ward's focus on the instructions for "How to Play Hangman" is misplaced. Opp. 5-6, 13. Since the parties are both presenting the same game, it is inevitable that there will be some similarities in their description of how to play. Courts have long held that game rules are not copyrightable because granting a copyright would "prevent publication of the rules of any simple game in the public domain" which impermissibly "would afford protection to the game itself." *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1189 (2d Cir. 1975).

In sum, Ward's copyright in the text of his books does not extend to the visual elements of those books, and those elements are in any event not copyrightable because they are not original to Ward, or are scenes à faire for a scratch-off hangman game, functional, or otherwise unprotectable. There is no substantial similarity between AMP's books and any copyrightable aspect of Ward's, and his copyright claim accordingly should be dismissed with prejudice.

## II. WARD'S TRADE DRESS CLAIMS ARE MERITLESS

Attempting to save his meritless trade dress claim, Ward again ignores the governing authority and misconstrues AMP's arguments. Contrary to Ward's assertions, courts have time after time confirmed that in order to survive a motion to dismiss, a claim for trade dress infringement must identify the specific features that constitute the trade dress, *and specify how those features are distinctive*. *See, e.g., Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009) (dismissing complaint alleging "laundry list of the elements that constitute a [product's] design, rather than a description of which of plaintiff's trade dress design elements are distinctive and *how they are distinctive*.") (emphasis added); *Urban Grp. Exercise Consultants, Ltd.*

---

[4] The "dashed-line" aspect of AMP and Ward's drawings is a functional feature, as players are required to draw over the dashed line to tally each wrong guess.

7

*v. Dick's Sporting Goods, Inc.*, 2012 WL 3240442, at *5 (S.D.N.Y. 2012) ("To allege a valid cause of action for trade dress infringement, a plaintiff must specify 'not just which features are distinctive, but also how they are distinctive.'") (citation omitted); *High Point Design LLC v. Buyer's Direct, Inc.*, 2012 WL 1820565, at *6 (S.D.N.Y. 2012) (conclusory assertion that products "'have a distinctive, immediately recognizable overall look and feel that constitutes protectable trade dress'" is "inadequate as a matter of law.") (citation omitted); *Heller Inc. v. Design Within Reach, Inc.*, 2009 WL 2486054, at *6 (S.D.N.Y 2009) ("the plaintiff must articulate the specific elements which compromise its distinct dress. In addition, the plaintiff must specify not just which features are distinctive, but also how they are distinctive.") (quotation marks and citations omitted). Ward's complaint completely fails to identify which elements of his supposed trade dress are distinctive or how they are distinctive—much less alleging any facts capable of demonstrating such distinctiveness. *See, e.g., Heptagon Creations, Ltd. v. Core Grp. Marketing LLC*, 2011 WL 6600267, at *7 (S.D.N.Y. 2011) (Rejecting complaint that "alleged no facts demonstrating that any aspect of the nine [products] exists for the sole purpose of identifying [plaintiffs] as the source of the [products]."), *aff'd*, 2013 WL 135409 (2d Cir. 2013).[5]

Ward also failed to plead facts demonstrating that the elements of his purported trade dress are non-functional. Ward turns the law on its head by arguing that "AMP has never proffered the argument that the overall trade dress that consumers recognize . . . is functional." Opp. 17. It is the plaintiff's obligation to plead that its trade dress is non-functional, and "[f]ailure to plead non-

---

[5] Ward's complaint is no less deficient because he "attaches a representative photograph to the complaint." Opp. 17. "[I]mages alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress." *Heller Inc.*, 2009 WL 2486054, at *6; *see, e.g., Nat'l Lighting*, 601 F. Supp. 2d at 562-63 ("Plaintiff's trade dress claim is not rescued by the mere attachment of brochures, photographs and specifications to the Amended Complaint. . . . Courts cannot be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional."). Likewise, Ward is not helped by his assertion that the focus should be on "the overall trade dress claimed," not its individual elements. Opp. 17. Courts have made clear that "'focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress.'" *Urban Group*, 2012 WL 3240442, at *4 (citation omitted).

8

functionality is fatal to a trade dress claim." *ID7D Co. v. Sears Holding Corp.*, 2012 WL 1247329, at *6 (D. Conn. 2012); *see, e.g., Telebrands Corp.*, 719 F. Supp. 2d at 298 n.10 ("failure to plead non-functionality is fatal to this claim as it relates to both product design and product packaging trade dress."). For example, in *Urban Group*, the plaintiff, like Ward here, contended that it did not need to assert facts demonstrating that its trade dress was not functional "because the burden is on Defendant to demonstrate functionality." 2012 WL 3240442, at *6. Rejecting that argument, the court stated that "the law is well-settled that a plaintiff alleging infringement or dilution of unregistered trade dress must prove that its alleged trade dress is nonfunctional" and thus "Plaintiff's contention that it need not plead any facts establishing that its alleged trade dress is non-functional is in error." *Id*. Simply stated, where, as here, a "Complaint fails to allege facts establishing Plaintiff's trade dress to be non-functional, Plaintiff has failed to assert a valid cause of action for trade dress infringement." *Id.*; *see, e.g. ID7D Co.*, 2012 WL 1247329, at *7 (dismissal warranted where plaintiff "has failed to plead in its complaint that any of the specific elements it is claiming trade dress for are non-functional."[6]

Ward attacks AMP for supposedly making the "suggestion that a disclaimer" on its books "dispels any confusion." Ward. Mem. 20 n.21. AMP, however, made no such suggestion—the word "disclaimer" appears nowhere in AMP's papers. Rather, AMP argued that any possible confusion posed by the contents of the parties' respective books is dispelled by the covers of those books—which are replete with the parties' names and marks and which leave no doubt as to the sources of the respective works. *See, e.g., Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 515 (S.D.N.Y. 2012) ("The

---

[6] Ward's rendition of AMP's position at the January 14, 2013 Pre-Motion Conference is flat-out false. Following AMP's presentation of the grounds for its proposed motion, the Court inquired whether Ward wished to amend his complaint. Ward's counsel responded that she generally did not wish to amend, but if it would satisfy AMP, Ward could amend to include a statement that his trade dress is non-functional. The Court then inquired of AMP whether such an amendment would obviate the need for a motion. AMP responded that it would not because merely adding a conclusory statement that trade dress is non-functional would not cure the defect in Ward's claim nor change the functional nature of what he sought to protect.

fact that the Episode's source is CBS and not Plaintiff is clearly evidenced by the prominent display of the series' title and CBS's own recognizable "Eye" logo, as well as the short caption beneath the clip which references only named characters on the series."). The sources similarly are distinguished by the distinct cut out shape used by Ward.[7] Ward's contention that consumers would be confused because their scratch-off games are similar is simply implausible. Under the circumstances, the Court may find no likelihood of confusion as a matter of law on a motion to dismiss. *See, e.g., Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) (motion to dismiss should be granted "where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work (and without relying on the likelihood of confusion factors to do so).").

Ward's submissions also do not save his common law unfair competition claim. "In New York, a common law unfair competition claim is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith. Since [plaintiff] has not adequately alleged a Lanham Act claim, its claim for common law unfair competition necessarily fails." *Heptagon Creations*, 2011 WL 6600267, at *9. Moreover, the complaint contains no facts capable of showing bad faith on AMP's part.

## CONCLUSION

For the foregoing reasons, AMP respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety, together with such other and further relief as the Court deems just and appropriate.

---

[7] Ward asserts that "not all of Brainteaser's books contain the same cut-out shape." Opp. 4 n.4. However, *all* of Ward's books identified in the complaint do employ the distinctive shape. Supplemental Penchina Dec. Ex. 1.

10

Dated: March 15, 2013

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By: _____
 Robert Penchina
 rpenchina@lskslaw.com
 321 West 44th Street, Suite 1000
 New York, NY 10036
 Tel: (212) 850-6109
 Fax: (212) 850-6299

*Attorneys for Defendant Andrews McMeel Publishing, LLC.*